**Vernon E. GOODSON, Appellant,**

**v.**

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 9697.**

United States Court of Appeals
Fourth Circuit.

Argued June 28, 1965.

Decided Oct. 25, 1965.

John Ritchie, Jr. (Court-assigned counsel), Richmond, Va. (Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Circuit Judge, and THOMSEN, District Judge.

HAYNSWORTH, Chief Judge:

Goodson, a Virginia prisoner, was convicted in the Circuit Court of Powhatan County of an escape from imprisonment. He received a three-year sentence on the escape charge, which he now attacks upon the ground that his court-appointed lawyer was the Commonwealth's Attorney for neighboring Cumberland County.

Council Opinion No. 2, reported in the Twenty-second Annual Report of the Virginia State Bar, records the history in Virginia of representation by Commonwealth's Attorneys of criminal defendants being tried in a county other than the one principally served by the lawyer in his capacity as public prosecutor. It is said to be a practice of some breadth dating from the time of creation of the

office of Commonwealth's Attorney. It is also reported that Virginia's General Assembly has fixed the compensation of the Commonwealth's Attorneys in the expectation that they would supplement their salaries with fees earned in the defense of persons charged with violations of the laws of the Commonwealth in counties other than their own.

The ethics of the practice have been the subject of discussion in Virginia. In 1943, the Legal Ethics Committee of the Virginia State Bar reported in its Opinion No. 5 that there was nothing unethical in the practice. Fourteen years later, in its Opinion No. 73 (1957), it reversed itself, after having earlier ruled that it would be improper for a Commonwealth's Attorney to represent a defendant charged with crime in a United States District Court.[1] An appeal from Opinion No. 73 was taken to the Council of the Virginia State Bar, however, and the Council refused its approval. In 1958, however, the Council adopted a resolution providing for the creation of a special committee to consider the matter further and report its conclusions.

The committee made its report in 1960, which is recorded as Council Opinion No. 2. In addition to reviewing the history of the practice, it recited the previous opinions and actions of the Legal Ethics Committee and of the Council. It noted relevant opinions of the American Bar Association's Committee on Ethics [2] and the opinion of the court in In re Wakefield, 107 Vt. 180, 177 A. 319 (1935). It reviewed the considerations which it thought relevant and concluded that the practice in some cases, but not always, would involve conflicts of interests.

In light of the venerability of the practice and the low compensation of the prosecutors, the committee concluded that the matter should be left to the General Assembly. It thought the proper corrective was an absolute prohibition of representation by a Commonwealth's Attorney of any person accused of crime, but it thought the prohibition should not be imposed until the General Assembly adjusted their salaries to compensate the attorneys for the loss of income the prohibition would entail. Meanwhile, it admonished the prosecutors to accept assignments as defense counsel in criminal cases only after careful consideration of the nature of the charge and the possible relation of the defendant, the witnesses and the alleged occurrences to his own county.

We, here, are not concerned with the ethics of the attorney's acceptance of the court's appointment. Enforcement of ethical standards is the primary concern of the state courts and of state associations of lawyers and judges. Transgressions of professional standards in the federal courts are subject to federal control, but conduct which is arguably unethical in the courts of a state is a matter of state concern.

Our inquiry as to the conduct of attorneys in state courts is limited to possible deprivation of the constitutional rights of defendants. If the state-court defendant employed the lawyer or sought his employment and was fully aware of the situation, he has no federal constitutional right to complain that the lawyer's acceptance of his employment might have been ethically questionable. When the defendant exercises no choice, however, when his lawyer is selected regardless of his wishes, the potential conflicts of interest which underlie the ethical considerations are matters of federal concern.

The federal constitution guarantees to persons accused of crime in state courts the right to representation by a lawyer.[3] The constitutionally protected right is not satisfied by formalsims; the right is to effective represen-

---

1. Opinion No. 59 (1955).

2. ABA Opinion No. 30 (1931), for instance, declares that it is improper for a public prosecutor in one state to defend a person accused of crime in another state.

3. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

tation.[4] That is not to say that every indigent defendant is entitled to the services of the most competent lawyer practicing in the area or to one whose judgment as exercised during the course of his representation may be said to have been superior when subjected to subsequent scrutiny. It does mean that the indigent defendant is entitled to a lawyer who can give to his client undivided loyalty and faithful service. A lawyer forced, or attempting, to serve masters with conflicting interests cannot give to either the loyalty each deserves.

◼ Thus, it is now settled that a lawyer representing multiple defendants whose interests are conflicting cannot act with that degree of loyalty which effective representation requires.[5] He cannot do so if he has conflicting commitments to other clients not on trial,[6] or if he is employed by the prosecuting sovereign and charged with duties relating to the investigation or prosecution of that case.[7]

Conflicting interests are at least possible in the practice which Goodson attacks here. The Commonwealth's Attorney is an official of the Commonwealth. His compensation is paid in part directly by the Commonwealth. While his duties of active prosecution are limited largely or entirely to the county in which he lives, that is only a part of his larger responsibility of enforcement of the laws of the Commonwealth. Each such attorney may have assigned to him a particular row to hoe, but the overall objective is the cultivation of the entire field. That objective can be achieved only if each Commonwealth's Attorney tends his row and does not obstruct his fellows.

◼ Loyal and effective respresentation of a person charged with crime in a state court may require defense counsel to question the constitutionality of state laws or to seek restrictive interpretations of them. He may find it necessary to attack the practices and conduct of law enforcement officials, including those of the prosecutor. In either of these events, if defense counsel is a Commonwealth's Attorney, he may find himself required as defense counsel to attack laws, interpretations, practices and conduct which, as Commonwealth's Attorney, he is bound to defend and uphold in an adjoining county. He may be loath to take a position as defense counsel which he would find embarrassing as Commonwealth's Attorney.

If the defendant seeks to be represented by one he knows to be the Commonwealth's Attorney in another county, there may be no difficulty in communication between them. If he did not seek it, however, the defendant may be reluctant to confide in a lawyer whom he

---

4. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L. Ed. 158; Case v. State of North Carolina, 4 Cir., 315 F.2d 743.

5. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Case v. State of North Carolina, 4 Cir., 315 F. 2d 743.

6. Porter v. United States, 5 Cir., 298 F.2d 461.

7. Von Moltke v. Gillies, 332 U.S. 708, 68 S. Ct. 316, 92 L.Ed. 309; Berry v. Gray, W.D.Ky., 155 F.Supp. 494. In the unreported case of Harmon v. Peyton, E.D. Va., C.A. No. 3734-M, it appeared that a lawyer appointed to represent an indigent defendant was elected Commonwealth's Attorney before the case was reached for trial. By virtue of his office, he was then charged with the prosecution of the client he was obligated to defend under the court's appointment. He sought leave to withdraw. Inexplicably, it was refused; he was required to continue as defense counsel. It was held that his conflicting interests made his representation inadequate.

In Harmon v. Peyton, defense counsel, at the time of trial, was the Commonwealth's Attorney for the county in which the trial was held. That circumstance marks a difference between Harmon and this case, a difference which may not be without significance.

knows to be a state prosecutor.[8] This would be particularly true if the crime were not uncomplicated, or were of a type which might have ramifications in other counties. Even in the usual case, it would be difficult to find a basis for perfect assurance that the full and open disclosure which the attorney-client relation requires might not involve information about other crimes, information which the defendant would wish to remain undisclosed to any prosecutor.

The possibility of a need for a change of venue to the county in which defense counsel is the prosecuting attorney may be remote, but the possibilities of conflict in the other areas we have mentioned are not. Decided possibilities of conflicts in interest are inherent in the situation when a Commonwealth's Attorney undertakes the role of defense counsel in an adjoining county. They are all the greater when the court has selected the lawyer.

This was the conclusion of Council Opinion No. 2. We agree with the Council, too, that the only practical remedy appears to be a blanket prohibition of the practice. Since we deal with constitutional rights, however, not with ethics, the remedy enforceable in the federal courts is not as broad as the recommendation.

■ If a defendant chooses to be represented by a prosecutor from another county, it will not be anticipated that there should be any special difficulty or restraint in communications between them. If conflicts develop in other areas, as in the interpretation or application of state laws, a defendant need not be allowed to complain collaterally of a situation he created voluntarily. A different situation is presented where the court selects and appoints a public prosecutor to represent and defend him.[9]

■ Conflicts of interest inhere in the situation, but in a given case, they may not be present at all. Here the charge of escape was simple and uncomplicated. It did not involve ramifications in other counties; nor did it present any occasion for far-ranging inquiry which might have produced, if fully answered, information indicative of other criminal conduct. An examination of the record of the trial discloses no possible issue involving the application of any state law. It does reveal a very competent performance by defense counsel. Neither Goodson nor his very imaginative and industrious lawyer in this court has suggested anything which might have been done for Goodson in the state trial court which was not done or anything that was done which should not have been done. In light of the charge and its simplicity, we have no hesitancy in concluding that Goodson suffered no actual prejudice by reason of his representation by a lawyer who, at the time, was Commonwealth's Attorney of another county.

■ When a lawyer represents multiple defendants with conflicting interests, a showing of actual prejudice is not a prerequisite of relief. It is enough that the conflict in interest exists.[10] This case is different, for we have found that in this case there was no conflict. Because there was none, we think Goodson is not entitled to relief.

Since conflicts of interest are so likely, however, and since in most cases in which they are not apparent on the surface, one cannot know with assurance that there were no subliminal or concealed conflicts which may have affected the outcome of the trial, we think it may well be that the only workable rule of the future will be a per se one, in which it would be presumed that one involun-

8. Of course, it would be incumbent upon the attorney to tell the defendant that he was a prosecutor.

9. Our decision will have no substantial, adverse effect upon the earnings of Commonwealth's Attorneys, a matter about

which the Council was concerned. Court-appointed lawyers serve the indigents.

10. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457.

tarily represented by a public prosecutor in a criminal trial has not had the fair trial to which he is constitutionally entitled.[11]  In view of the development of the law, as evidenced by recent Supreme Court decisions and Council Opinion No. 2 rendered by the Council of the Virginia State Bar in 1960, the entire question will no doubt be reviewed by the Legislature and the courts of the State.

Since, in this extraordinary case in light of the simplicity of the charge, we are satisfied that Goodson suffered no actual prejudice, however, and his retrial, under all the circumstances, would not aid the orderly administration of justice, we affirm the District Court's denial of habeas corpus.

Affirmed.

---

11. There is precedent, of course, for our application of a different rule to proceedings terminated earlier.  See Linklet-

ter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.