THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS CHARLES FULLER, II, Defendant-Appellant.

(No. 11840;

Fourth District—August 15, 1974.

John F. McNichols and J. Daniel Stewart, both of State Appellate Defender's Office, of Springfield, for appellant.

John J. McCarthy, Jr., State's Attorney, of Charleston (Paul C. Komada, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-appellant Thomas Charles Fuller, II, was convicted October 23, 1968, on pleas of guilty to 5 counts of murder. The defendant shot, and killed, 5 children. The victims were Louis Cox, age 16, Theresa Cox, age 9, Mary Cox, age 8, Gary Cox, age 7, and Kenneth Cox, age 5. Hearing in aggravation and mitigation commenced on November 4, 1968, lasted 5 days, and was concluded on November 11, 1968. Defendant was sentenced on December 10, 1968, to indeterminate terms of 70 to 99 years on each count of the indictment. The sentences involving the murder of Theresa Cox and Mary Cox to run concurrently but consecutively to the concurrent sentences imposed on the counts relating to the deaths of Gary Cox, Louis Cox and Kenneth Cox. There was no direct appeal.

On July 14, 1971, appointed counsel filed an amended post-conviction petition alleging certain constitutional deprivations. Following an evidentiary hearing the trial court entered its order denying the relief sought, and this appeal ensued. Only two issues are presented, the first of which is stated in defendant's brief as follows:

"1. Was the defendant denied his constitutional right to the effective assistance of counsel because one of his appointed attorneys had a conflict of interest by having a contract with the defendant to handle publication rights to certain written and other materials of the defendant relating to the crimes with which he was charged?"

The evidentiary background against which the issue is posed may be summarized as follows: The defendant was arrested in connection with these offenses on April 28, 1968, and on that date William A. Cherikos,

public defender of Coles County, was appointed as counsel for the defendant. Preliminary hearing was had on May 3, 1968. On May 20 or May 23, 1968, another attorney, Mr. Whitney D. Hardy, was appointed as co-counsel. Both attorneys served as counsel for the defendant until the case was terminated by imposition of sentence by the trial judge.

Sometime between Attorney Hardy's appointment in May, 1968, and December 8, 1968, the contract, prepared by Hardy, was entered into between the defendant, Attorney Hardy and defendant's mother, Mrs. Lucy Fuller. Defendant was 18 years of age at the time.

The precise date on which the agreement was signed is unclear, the evidence tends to establish that it was signed in the month of December, 1968, and probably between December 5 and December 8, 1968. On defendant's request Attorney Hardy surrendered the contract in the month of January, 1969. The defendant had submitted to psychiatric examination at the Menninger Clinic, and the examinations had been recorded on video tape. It also appears that the defendant had written three books, and had kept a diary. It does not appear from the record that any writing of the defendant had ever been published. Under the terms of the contract Hardy agreed to protect defendant's "common-law" rights to the unpublished writings and the video tapes, in consideration of a contingent fee equal to one-third of any royalties received if, as and when publication occurred.

In January, 1969, Hardy terminated the contract on request of the defendant.

The issue presented is narrow, and it is precise. It is as important to recognize what defendant does *not* claim as it is to realize that which he *does* contend. He does *not* contend that Attorney Cherikos had any conflict of interest or that his representation was anything other than competent. He does not contend that he had a defense to the charges which counsel bungled or failed to present. Indeed the record establishes guilt not only beyond reasonable doubt, but beyond any doubt. He does not contend that his plea was coerced, that the taking of the plea was involuntary in any sense, or that any constitutional infirmity of any sort surrounded the taking of the plea or the decision to plead, nor does he urge any constitutional deprivations obtaining prior to or after his arrest.

What defendant does argue, and state the issue to be, is that once a conflict of interest appears on the part of counsel a per se rule applies which mandates reversal *without* a showing of prejudice. Defendant bottoms this argument upon several supreme court and appellate court decisions. He cites *People v. Ware*, 39 Ill.2d 66, 233 N.E.2d 421. In *Ware*, an attorney represented both co-defendants whose positions were

antagonistic. In reversing the court reaffirmed the rule enunciated in *People v. Dolgin,* 415 Ill. 434, 114 N.E.2d 389, which held that co-defendants have a right to separate counsel if their positions are antagonistic. The court in *Ware* further stated that it would not "* * * attempt to measure the prejudice sustained by the defendant, for, as the Supreme Court stated in *Glasser v. United States,* 315 U.S. 60, 76, 86 L.Ed. 680, 62 S.Ct. 457: 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial'." 39 Ill.2d at 68.

Defendant also relies upon *People v. Meyers,* 46 Ill.2d 149, 263 N.E.2d 81. There defendant entered a plea of guilty to the crime of burglary while represented by appointed counsel who also represented the defendant's wife on a possible dramshop action against the tavern where defendant had been drinking prior to commission of the crime. In reversing the conviction and remanding for the purpose of permitting defendant the opportunity of withdrawing his plea the court noted that counsel "* * * conceivably stood to gain a contingent fee which would presumably increase in proportion to the length of defendant's sentence." (46 Ill.2d at 152.) The court also criticized counsel's neglect to call to the attention of the sentencing judge the State's Attorney's recommendation of sentence which was for a term less than that imposed.

Defendant cites *People v. Richardson,* 7 Ill.App.3d 367, 287 N.E.2d 517, and *People v. Krause,* 7 Ill.App.3d 701, 288 N.E.2d 530. *Richardson* dealt with the same conflict of interest described in *People v. Meyers,* 46 Ill.2d 149, 263 N.E.2d 81, and this court held that *Meyers* controlled. In *Krause* appointed counsel, at the time of his first appearance advised the court that a conflict of interest existed, and that it had arisen prior to his appointment. Despite defendant's statement to the court that the attorney's appointment was agreeable to the defendant counsel reiterated that the conflict existed and that defendant should have other representation. The trial judge made no inquiry as to the extent or nature of the conflict nor is it revealed in the record. Under these circumstances this court reversed and remanded with directions to permit defendant to plead anew because of the refusal of the trial judge to allow counsel's motion to vacate the appointment.

Lastly, defendant cites *People v. Stoval,* 40 Ill.2d 109, 239 N.E.2d 441, and *Glasser v. United States,* 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457, the latter being cited in the opinion in *Stoval.* In *Stoval,* defendant was charged with burglary. Appointed counsel had personally represented the victim and his law firm was currently representing the victim. The *Stoval* court reversed the conviction and remanded for further proceedings stating that "In a case involving such a conflict there is no necessity

for the defendant to show actual prejudice. *Glasser v. United States,* 315 U.S. 60; *Goodson v. Peyton* (4th Cir.) 351 F.2d 905." This holding in *Stoval* is the source of defendant's contention that no prejudice need be demonstrated once a conflict of interest on the part of counsel appears, as to put the matter another way it is contended that under the above quoted language from *Stoval,* Illinois promulgated a per se rule governing all conflicts of interest.

We first note that both *Stoval* and *People v. Meyers,* 46 Ill.2d 149, 263 N.E.2d 81, involve a commitment to others on the part of counsel. The court in *Stoval,* as above noted, cited *Glasser v. United States,* 315 U.S. 60, and *Goodson v. Peyton* (4th Cir.) 351 F.2d 905, in support of its ruling that in "* * * such a conflict" no prejudice need be shown. *Glasser* also involved appointed counsel representing co-defendants with conflicting interests. The possibility of the conflict arising during trial had been brought to the attention of the trial judge. The conflict was in fact demonstrated by the declination of counsel to cross examine one witness whose testimony was damaging to Glasser but not to his co-defendant. The Supreme Court reversed because of the denial of Glasser's sixth amendment rights to assistance of counsel and remarked that it would not indulge in weighing the amount of prejudice arising from the denial. *Glasser,* as does *Stoval* and *Meyers,* involves a commitment to others on the part of counsel.

*Goodson v. Peyton,* 351 F.2d 905, is also cited in *Stoval.* In *Goodson,* the defendant was convicted of the crime of escape in the circuit court of Powhatan County, Virginia. His appointed counsel was the Commonwealth Attorney for the neighboring county of Cumberland. On appeal the defendant claimed that his representation by an attorney whose responsibility as a public official was to seek enforcement of the law demonstrated a conflict of interest on the part of counsel in that he had a commitment to others (*i.e.,* the public at large) which conflicted with his responsibility to the defendant. In affirming the conviction the court stated, "Thus it is now settled that a lawyer representing multiple defendants whose interests are conflicting cannot act with that degree of loyalty which effective representation requires. [*Glasser v. United States,* 315 U.S. 60.] He cannot do so if he has conflicting commitments to other clients not on trial, [*Porter v. United States,* (5th Cir.) 298 F.2d 461] * * *." The court went on to state that in the instant case it found no conflict and also, "In light of the charge and its simplicity, we have no hesitancy in concluding that *Goodson* suffered *no actual prejudice* by reason of his representation by a lawyer who, at the time, was Commonwealth's attorney of another county." (Emphasis added.) Thus, in *Goodson,* the court refused to apply a per se rule when the conflict

asserted did not involve a commitment to others within the concept of *Glasser.*

In *Porter v. United States,* 298 F.2d 461, defendant was convicted on a charge of violation of Federal narcotics law. His retained counsel, was at the time (but this fact was unknown to defendant) attorney for one Glass, an officer on the Fort Worth Police Department. Glass was involved in defendant's case, but defendant's counsel refused to call him as a witness. In reversing the conviction the court held that effective representation by counsel is lacking when counsel's "* * * full talents * * * are hobbled or fettered or restrained *by commitments to others."* (Emphasis added). *Glasser v. United States,* 315 U.S. 60.

In *Ray v. Rose,* —— F.2d —— (6th Cir. 1974), counsel for defendant had entered into an agreement with defendant whereby counsel was to receive a percentage of the royalties from a book or books to be written by another after interviews with the defendant. The fact that the agreement had been entered into was not in dispute. Following his conviction on a plea of guilty and imposition of sentence the defendant brought his petition for a writ of habeas corpus alleging that his plea was coerced by counsel, that his representation was motivated by a desire for profits from the publications. This case does not involve a commitment to others. The court did not apply a per se rule but rather remanded for an evidentiary hearing for the purpose of determining whether the defendant's plea was voluntarily and intelligently made.

■■ To summarize, we hold that Illinois has adopted a per se rule where counsel's conflict of interest arises from a commitment to others, but that it has not, thus far, adopted such a rule where the conflict arises in another fashion.

The defendant was also represented during the entire course of the proceedings in the trial court by the public defender, Attorney William Cherikos. As above noted there is no claim of conflict as to him, nor is there any contention that the representation afforded to defendant by Cherikos was in any way incompetent. Defendant testified at the evidentiary hearing on the petition, that Cherikos only consulted with him four or five times after the preliminary hearing. Cherikos testified that he represented the defendant "* * * throughout all stages of the consideration of the murder charges in this court * * * until the date he was sentenced and mittimus was issued". Cherikos further testified that he consulted with defendant many times at the county jail and estimated the number of those visits to be between 25 and 30, sometimes in the company of Attorney Hardy. It is also clear from the record that Cherikos was involved as was Hardy during the discussion

with defendant and members of defendant's family during the conference at which the defendant's decision to enter his plea was made. Cherikos' active participation as defendant's counsel is also demonstrated by the fact that he was as involved in the examination and cross-examination of the witnesses who testified during the lengthy hearing in aggravation and mitigation. Defendant's testimony that he relied on Hardy's advice to enter his plea is a statement concerning defendant's state of mind, it is to be weighed against the demonstrated extent of Cherikos' active participation in the case and his participation in the final conference with defendant and members of defendant's family during which the decision to enter a plea was made.

■■■ There is no disputing the proposition that Hardy's entering into the contract was a violation of Illinois Code of Professional Responsibility, Canon 5, DR 5-104(3), which specifically prohibits an attorney from securing a beneficial ownership in publication rights relating to the subject matter of the employment prior to the termination of all aspects *of the matter giving rise to the employment, even though employment has previously ended.* But the issue here is whether that conduct invoked the per se rule enunciated in *Stoval.* Since it did not involve a commitment to others, we hold that the rule was not invoked. That Cherikos' representation of defendant measured up to the sixth amendment guarantee of effective assistance of counsel is not questioned, nor is Hardy's actual performance of his duties as counsel for defendant questioned. Accordingly we agree with the holding of the trial judge that defendant was not denied his sixth amendment right to counsel.

■■ Defendant also contends that the sentences in question offend the provisions of article I, section 11, of the Illinois Constitution of 1970 in that the sentences cannot be said to comport with the objective of restoring the offender to useful citizenship. We see no useful end to be gained by the recital of the details of these crimes. Suffice it to say that the lives of 5 children were criminally destroyed. The sentences were imposed by the trial judge after 5 days of hearings in aggravation and mitigation, and the record reflects his careful, conscientious consideration of that evidence. The sentences imposed are within statutory limits. We further note that parole eligibility is to be determined under the provisions of the Unified Code of Corrections (*People ex rel. Weaver v. Longo,* 57 Ill.2d 67), with eligibility occurring in 20 years less credit for good time served. Accordingly the judgment of the trial court is affirmed.

Judgment affirmed.

SMITH, P. J., concurs.

Mr. JUSTICE CRAVEN dissenting:

I must respectfully disagree with the conclusion of my colleagues. As I understand the cases in this jurisdiction and the cases from the Federal courts, it is well established that the right to effective assistance of counsel is fundamental and entitles the person represented to the undivided loyalty of counsel. When facts are shown to establish that a defendant did not have the undivided loyalty of counsel and that counsel, whether retained or appointed, represented the defendant and at the same time had undertaken potential conflicting responsibilities, that fact without the necessity of a showing of actual prejudice constitutes a denial of the effective assistance of counsel and requires a new proceeding.

In *People v. Stoval*, 40 Ill.2d 109, 239 N.E.2d 441, Mr. Justice Ward, speaking for a majority of the court, specifically held that the existence of a possible conflict of interest placed too great a burden on counsel, however conscientious, and exposes counsel unnecessarily to later charges that his representation was not completely faithful. In a case involving such conflict, the court held that there was no necessity for the defendants to show actual prejudice. As the majority opinion notes, the Illinois Supreme Court relied upon *Glasser* and *Goodson*. The dissenting opinion by Justice House serves to emphasize the clear holding of the majority that Illinois had a per se rule. In *People v. Meyers*, 46 Ill.2d 149, 263 N.E.2d 81, Mr. Chief Justice Underwood, speaking for a unanimous court, reiterated the holding in *Stoval* and held that where appointed counsel conceivably stood to gain a contingent fee which would presumably increase with the length of the defendant's sentence, representation by that counsel of the defendant was such a conflict as to require the conviction to be vacated without a showing of prejudice. This court in *People v. Richardson*, 7 Ill.App.3d 367, 287 N.E.2d 517, following *Meyers*, held exactly the same thing and concluded that there need be no showing of prejudice, intentional fraud or misrepresentation, but the mere existence of a conflict was sufficient to set aside a conviction. In *Richardson*, the conflict was that counsel had undertaken to represent claimants in a dramshop suit.

In the majority opinion there is a clear acknowledgment of the Illinois per se rule when the conflict arises from a commitment to others. The majority would distingiush this case from the line of cited cases by asserting that here the commitment was not to others but was to the lawyer himself. I am unable to make such a distinction. Where, as here, the lawyer has a contract by the terms of which he gets a percentage of the royalties from publication, I believe it is more of a conflict than a mere undertaking to represent a third party in a dramshop action with a possible contingent fee. The fact that there were two lawyers would

seem to make no difference. The conflict was there and by reason of that conflict the defendant was denied the effective assistance of counsel. See *Ray v. Rose,* —— F.2d —— (6th Cir. 1974), *cert. denied,* 42 L.W. 3663.