**Thomas Charles FULLER, II, Petitioner,**

v.

**Thomas ISRAEL, Respondent.**

No. 75–3–278.

United States District Court,
E. D. Illinois.

Oct. 28, 1976.

Michael Mulder, Asst. State Appellate Defender, 2nd Judicial District, Elgin, Ill., for petitioner.

James B. Zagel, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

FOREMAN, District Judge:

Petitioner, Thomas Charles Fuller, II, presently incarcerated at Menard Correctional Center, Chester, Illinois, seeks Habeas Corpus relief from a conviction for Murder. 28 U.S.C. § 2254.

The Petitioner was arrested on April 28, 1968, and charged with the murder of five children in Coles County, Illinois. On October 23, 1968, he pled guilty to five counts of Murder and was sentenced on December 10, 1968, to an indeterminate term of 70 to 99 years on each count. There was no direct appeal.

On July 14, 1971, Petitioner filed a post-conviction petition alleging inter alia; that his constitutional rights were violated because of a conflict of interest involving his trial counsel. Following an evidentiary hearing the trial court entered an order denying the relief requested, and the Petitioner appealed the denial of his post-conviction petition. The trial court's decision was affirmed by the Appellate Court of Illinois for the Fourth District on August 15, 1974. Petitioner sought leave to appeal to the Illinois Supreme Court, which was denied on November 26, 1974.

On the date of Petitioner's arrest, William A. Cherikos (Cherikos), the Public Defender of Coles County, was appointed counsel for the Petitioner. A preliminary hearing was held on May 3, 1968. On May 20 or 23, 1968, a second attorney, Whitney D. Hardy (Hardy), was appointed as co-counsel for Petitioner. Both attorneys represented the Petitioner until he was sentenced on December 10, 1968.

Sometime between Hardy's appointment in May 1968 and December 8, 1968, a contract, prepared by Hardy, was entered into between the Petitioner, Petitioner's mother, and Hardy. The record is unclear as to the precise date on which the agreement was signed; however, the evidence tends to show that it was signed sometime early in December. What is clear is that it was signed sometime after Petitioner's plea of guilty on October 23, 1968, but before his sentencing on December 10, 1968. Under the terms of the contract, Hardy agreed to perform all legal services and to render advice in reference to the protection of Petitioner's "common-law" rights to the unpublished writings and video tapes. In consideration for such services, Hardy was to receive a contingent fee equal to one-third of any royalties received if and when publication occurred. The contract was terminated in January 1969 at the request of Petitioner. The Petitioner, prior to entering into the contract, had written three books and had kept a diary of his daily activities; although none of his works had ever been published. In addition, Petitioner had submitted to a psychiatric examination at the Menninger Clinic, and the examination had been recorded on video tape.

Petitioner argues that the contractual agreement created a conflict of interest on the part of Hardy and resulted in a denial to him of effective assistance of counsel. Petitioner contends that the materials forming the basis for the contractual agreement related to the offenses with which he was charged and as such placed his attorney in a situation of conflicting interests, namely: Hardy's obligation to provide Petitioner with effective representation on the one hand as opposed to his potential financial gain by persuading Petitioner to plead guilty so the information contained in Petitioner 's documents would not be disseminated to the public by virtue of a trial record.

The first issue confronting this Court is whether an evidentiary hearing is necessitated by Petitioner's allegations. The Court has before it the transcript of the state post-conviction hearing during which the Petitioner raised and presented evidence on the same issue raised in the petition before this Court. The fact-finding procedures employed by the state court were adequate to afford Petitioner a full and fair hearing. The material facts were adequately developed during the state court hearing and the proceedings were sufficient to meet the requirements of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d

770 (1963). Therefore a further evidentiary hearing is not warranted based upon the record in this case nor would the ends of justice be enhanced or the Petitioner benefit from such a further hearing.

Turning next to the merits of the petition. While it is true that the contract violated the Illinois Code of Professional Responsibility, Canon 5, DR 5–104(3) and Rule 5–104(B) of the Code of Professional Responsibility of the American Bar Association, the issue before this Court is not whether the contract violated the standards of professional conduct of either the Illinois or American Bar Associations, but whether the conflict of interest created by the existence of the contract constituted a deprivation of effective assistance of counsel in violation of Sixth Amendment guarantees. Petitioner contends that once a potential conflict of interest is shown to have existed on the part of his trial counsel he is entitled to habeas corpus relief and need show no prejudice by the existence of such conflict of interest.

The Illinois Appellate Court succinctly summarized Petitioner's argument as follows:

"The issue presented is narrow, and it is precise. It is as important to recognize what defendant does *not* claim as it is to realize that which he *does* contend. He does *not* contend that attorney Cherikos had any conflict of interest or that his representation was anything other than competent. * * * Indeed the record establishes guilt not only beyond reasonable doubt, but beyond any doubt. He does not contend that his plea was coerced, that the taking of the plea was involuntary in any sense, or that any constitutional infirmity of any sort surrounded the taking of the plea or the decision to plead, nor does he urge any constitutional deprivations obtaining prior to or after his arrest.

What defendant does argue, and state the issue to be, is that once a conflict of interest appears on the part of counsel a *per se* rule applies which mandates reversal *without* a showing of prejudice."

*People v. Fuller,* 21 Ill.App.3d 437, 315 N.E.2d 687, 688 (1974).

In *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941), cited by Petitioner, the Supreme Court considered the issue of denial of effective assistance of counsel in a conflict of interest situation. There the Court stated:

"The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. 60, 76, 62 S.Ct. 457, 467.

Although the Court concluded that a showing as to the "amount of prejudice" is not necessary, it is equally clear from the Court's opinion that some actual prejudice must be shown. 315 U.S. 60, 76–77, 62 S.Ct. 457. Consequently for Petitioner to prevail some showing of prejudice must be demonstrated. Such a showing of prejudice has been repeatedly required since the *Glasser* opinion in other circuits, see *United States v. Berriel,* 371 F.2d 587 (6th Cir. 1967), cert. denied, 390 U.S. 907, 88 S.Ct. 830, 19 L.Ed.2d 875 (1968); *United States v. Burkeen,* 355 F.2d 241 (6th Cir. 1966); *Harris v. Thomas,* 341 F.2d 560 (6th Cir. 1965); *Craig v. United States,* 217 F.2d 355 (6th Cir. 1954); *United States v. Mari,* 526 F.2d 117 (2d Cir. 1975); *United States v. Wisniewski,* 478 F.2d 274 (2d Cir. 1973); *United States v. Alberti,* 470 F.2d 878, 881 (2d Cir. 1972), cert. denied, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973); *Ford v. United States,* 126 U.S.App.D.C. 346, 379 F.2d 123 (1967), and in this Circuit *United States v. Jeffers,* 520 F.2d 1256 (7th Cir.).

Having concluded that Petitioner must show some prejudice to prevail on his petition, the Court will next consider the prejudice to Petitioner, if any, from Hardy's potential conflict of interest.

It is unquestionably true that the contractual agreement involving the Petitioner, his parents, and Hardy placed Hardy in a potential conflict of interest situation. However, despite the repeated disapproval of such contracts by both the bench and bar, evidence of the existence of the con-

tract alone is insufficient to prove ineffective assistance of counsel. It is significant to note that from the time of his arrest to the time of his sentencing Petitioner was represented by Cherikos against whom no allegations of impropriety are directed. Cherikos visited the Petitioner within a day or two of his arrest and counseled Petitioner continuously throughout every phase of the trial including sentencing. Although the frequency of Cherikos' visits to Petitioner, while in jail, may be in dispute, it is uncontradicted that Cherikos was an active participant in Petitioner's representation. He visited the Petitioner in jail; had frequent discussions with him concerning motions and carried on a dialogue with Hardy concerning matters which arose during their representation of Petitioner. He made efforts to curb adverse publicity and explained the judicial proceedings to Petitioner and his parents. Cherikos was no novice to the practice of law or the trial of criminal cases and pursued Petitioner's interest in an adversary manner throughout the some eight months he represented him.

Hardy himself spent more than six months representing the Petitioner nearly full time. The trial court in commenting on Hardy's devotion to Petitioner's case in its memorandum order stated:

> "These attorneys devoted a great amount of time and pursued all avenues in the preparation of his case. In fact Hardy devoted all his time to the case from the time of his appointment until the conclusion of the hearing, as evidenced by his time report filed with the Court."

Petitioner when examined by the trial court prior to acceptance of his plea, expressed unqualified satisfaction with the representation he had received from both Hardy and Cherikos. Repeatedly during the examination by the Court the Petitioner acknowledged his guilt of the crimes charged and stated that his plea was voluntary and free from any promises or coercion. Both Hardy and Cherikos went to considerable effort to explain all options to Petitioner and to Petitioner's parents. Hardy conducted an extensive investigation

prior to Petitioner's plea and interviewed numerous witnesses concerning Petitioner's case. Both attorneys expressed concern over Petitioner's incarceration, which was to follow his plea of guilty, and took steps to protect him even after incarceration. Both carefully weighed the alternatives including trial, which they felt they could not win and which might result in Petitioner's conviction and possibly his execution. They chose, in light of the factors involved, to recommend that the Petitioner plead guilty. The decision as to whether Petitioner should plead guilty or proceed to trial was ultimately left up to Petitioner. (R. 127). In short the record negates any conclusion that Hardy's representation of the Petitioner was in any way impaired or affected by the contractual agreement between Hardy and the Petitioner or by any financial motivations incident thereto. To the contrary, the record supports the conclusion that the recommendations by both attorneys were the result of a sincere concern for the Petitioner and were made only after careful consideration of the possible alternatives and consequences.

■ The Court, after a careful review of the record, is unable to conclude that the Petitioner sustained his burden of proving that he was prejudiced in any way as a result of the contractual agreement. To the contrary, the record belies any such contention. The record demonstrates that Fuller received representation which was "within the range of competence demanded of attorneys in criminal cases." See *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970). As the Supreme Court stated in *McMann supra,* in discussing the performance required of attorneys in a guilty plea situation:

> "As we said in *Brady v. United States, ante,* (397 U.S. 742) at 756–757 (90 S.Ct. 1463 at 1473–1474, 25 L.Ed.2d 747), the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known un-

less witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant, and his counsel must make their best judgment as to the weight of the State's case . . ." 397 U.S. at 769, 90 S.Ct. at 1448, 25 L.Ed.2d at 772.

\* \* \* \* \* \*

"It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts." 397 U.S. at 774, 90 S.Ct. at 1450, 25 L.Ed.2d at 775.

In conclusion, this Court is of the firm opinion that Fuller's Petition presents no meritorious grounds for a reconsideration of his conviction or sentence that a further hearing is not necessary, that his conviction should stand; that his constitutional rights were not violated; that he entered his plea of guilty knowingly, voluntarily, and of his own free will, that he was not denied effective assistance of counsel, and that his motion and the record in this case conclusively show that the Petitioner is entitled to no relief under Title 28, Section 2254, United States Code.

IT IS THEREFORE ORDERED that the Petitioner for Writ of Habeas Corpus, pursuant to Title 28, Section 2254, United States Code, be, and the same is hereby, denied.