May 17, 1977

## 77-27 MEMORANDUM OPINION FOR THE DIRECTOR OF THE EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

### Interchange of Counsel Project—Assistant United States Attorneys and Assistant Public Defenders

This is in response to your memorandum requesting our opinion on the legal and ethical aspects of having one or more Assistant United States Attorneys and Assistant Federal Public Defenders temporarily exchange duties. We understand that the purpose of the proposed exchange is to give the participating attorneys a greater understanding of and sympathy for counsel who appear against them, by allowing prosecutors to defend a number of criminal cases and vice versa. While several types of exchange programs have been conducted, all of the proposed programs necessarily contemplate that the participating attorneys will return to their former duties.

It should be noted at the outset that the attorneys employed by a Federal Public Defender Office are officers of the judicial branch of the Government. They are paid by the Administrative Office of the United States Courts from the appropriation for the judiciary, and they are ultimately responsible to the Judicial Council of the circuit in which they perform their duties. The Department of Justice has no control over them.[1] Assistant U.S. Attorneys, on the other hand, are employees of the Department of Justice.

---

[1] *See* 18 U.S.C. § 3006A(h)(2)(A), (j). The Federal Public Defender Office shares the task of defending indigents accused of Federal crimes with the private bar of the district in which it operates. *See* 18 U.S.C. § 3006A (a), (b).

The statute provides an alternative to the Federal Public Defender Office if the district court and the Circuit Judicial Council prefer the Community Defender Organization. The Community Defender Organization is a private, nonprofit organization funded by a block grant of judicial funds. *See* 18 U.S.C. § 3006A(h)(2)(B). While the statute requires the Community Defender Organization to report its activities and financial position to the Judicial Conference of the United States, it does not appear to prohibit the organization from receiving funds from other sources. Employees of a Community Defender Organization are not Federal employees.

APPLICABILITY OF THE CONFLICT OF INTEREST LAWS AND THE DEPART-
MENT'S STANDARDS OF CONDUCT

Section 205 of Title 18, U.S. Code, provides, in pertinent part, as follows:

> Whoever, being an officer or employee of the United States in the executive . . . or judicial branch of the Government . . . otherwise than in the proper discharge of his official duties—
>
> *     *     *     *     *     *     *
>
> (2) acts as agent or attorney for anyone before any department, agency, court-martial, officer, or any civil, military, or naval commission in connection with any proceeding . . . controversy, charge, accusation, arrest, or other particular matter in which the
>
> United States is a party or has a direct and substantial interest . . .

is guilty of a felony.[2] The statute expressly allows representation "in the proper discharge of . . . official duties." The House committee that drafted the statute stated that its purpose was to protect the "clear public interest in preventing Government employees from *allying themselves* actively with private parties in the multitude of matters and proceedings in which . . . the Government has a direct and substantial interest." [Emphasis added.][3] In the light of this intent, this Office has regarded § 205 as prohibiting Federal attorneys from serving as volunteer or appointed criminal defense counsel in United States and District of Columbia courts. But this limitation does not apply to a Federal Public Defender Office, whose statutory function is to defend Federal criminal cases.

The proposed exchange program therefore differs significantly from other proposals that we have considered. Instead of acting as private individuals or affiliates of a nongovernmental organization, participating Assistant U.S. Attorneys would be assigned by this Department to the Public Defender Office, another Federal Government agency, and would perform the official duties of that organization under its supervision. Those duties would include the defense of Federal criminal prosecutions. Thus, we see no problem as far as § 205 is concerned.[4]

It should also be noted that 18 U.S.C. § 203(a) and 28 CFR 45.735–6(a)(3) prohibit Department attorneys from soliciting or receiving any compensation other than "as provided by law for the proper discharge of official duties" in connection with litigation against the Government. The Department's Standards of Conduct, 28 CFR § 45.735–9(e), permit Department attorneys to provide uncompensated legal assistance to indigents in off-duty time, but in that connection they forbid "represen-

---

[2] The Department's Standards of Conduct, 28 CFR § 45.735–6(a)(2), duplicate the statute.

[3] H.R. Rep. 748, 87th Cong., 1st Sess., p. 9.

[4] This conclusion does not apply to the assignment of Department of Justice attorneys to a private legal services organization, such as a Community Defender Organization.

tation or assistance in any criminal matter or proceeding, whether Federal, State or local." For the reason stated above, we are of the opinion that these provisions do not restrict participation in an exchange program with a Federal Public Defender office.

## Ethical Implications

The contemplated exchange program does, however, raise ethical problems. The participating attorney is in a situation where his loyalties may be divided between a temporary and a permanent employer. When a temporary and permanent employer represent conflicting legal interests, the American Bar Association (ABA) Code of Professional Responsibility severely limits the attorney's freedom of action. Here the interest of the Assistant U.S. Attorneys is to prosecute and to establish case precedent conducive to effective prosecution; the interest of the Public Defender is to defend and to develop case law favorable to defendants. There is a certain inherent conflict in the two roles.

The disciplinary rules implementing Canon 5 of the Code of Professional Responsibility embody the ancient maxim that a person cannot serve two masters. Of particular significance is DR 5-105(A), which provides as follows:

> A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).

The rule applies not only to open conflicts but also to "subliminal or concealed" influences on the attorney's loyalty. *Goodson* v. *Payton,* 351 F. 2d 905, 909 (4th Cir. 1965); ABA Formal Opinion 30. For that reason it is considered unethical for an active prosecutor to represent criminal defendants in his or her own or another jurisdiction. *See* ABA Formal Opinions 30, 34, 118, 142. Similarly, it is considered unethical for an attorney or his associates [5] to attack the result of his professional efforts on behalf of a former private or governmental employer. ABA Formal Opinions 33, 64, 71. Finally, the rule would prohibit an attorney who is temporarily absent from his employer, with arrangements

---

[5] DR 5-105(D) provides:

> If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue employment.

While this rule clearly applies to colleagues with whom the lawyer shares a common financial interest, it also serves to prevent even the possible appearance of conflicting loyalties or disclosure of confidences within a group of lawyers who practice together. *See* ABA Formal Opinions 16, 33, 49, 296, 306; Informal Opinion 1235.

made for his return, from representing interests adverse to those of the permanent employer. ABA Formal Opinion 192.[6]

In a recent opinion,[7] the ABA considered the propriety of a military legal office providing both prosecution and defense counsel in the same court-martial. It was willing to approve the arrangement only if individual attorneys were assigned, as far as practicable, exclusively to prosecution or defense work. It stated that "performance of adverse roles in succeeding cases within the same jurisdiction, even though the cases themselves may be entirely unrelated, will involve lawyers in potentially awkward situations." The opinion continued:

> Depending on whether a lawyer is cast in a defense or prosecutorial role, he may be required to frame and advocate interpretations of established rules of law or procedure that are, or seem to be, poles apart. He may be required to criticize police actions in one case, then turn about to defend the same or similar actions in a subsequent case where the facts may be, or seem to be, the same. He will deal frequently with the same investigative or police personnel; he may appear before the same [judges]. In the course of this, the temptations may be great to mute the force of advocacy, or adjust the handling of cases in subtle ways.

The opinion also noted that an appearance of impropriety would be created, in violation of Canon 9, when the same attorney represented the prosecution and the defense in succeeding cases.

It is certainly open to argument that any temporary exchange of attorneys between a U.S. Attorney's Office and a Federal Public Defender's Office would create conflicting loyalties in violation of Canon 5 and DR 5-105(A). The interests of the respective offices serving in the same district are plainly adverse. Even if the participants in an exchange program were sent to other districts, they would still be involved in creating precedent adverse to the interests served by their permanent employers. The possibility that they would maintain a conscious or subliminal loyalty to the permanent employer is enhanced by the fact that both the Department of Justice and the Federal Public Defender Offices have considerable discretion in the pay and promotion of their attorneys.[8] It would be difficult to avoid the appearance that a

---

[6] In Formal Opinion 192, the question was whether a lawyer temporarily employed full time by the government could remain a member of his former law firm if he received no compensation from it. The opinion concluded that he could remain a member of the firm only "so long as the firm refrains from representing interests adverse to the employer."

[7] ABA Informal Opinion 1235 (August 24, 1972). *Accord: Goodson* v. *Payton, supra,* at 908. 908.

[8] *See* 18 U.S.C. § 3306A(h)(2)(A); 28 U.S.C. § 548; 28 CFR § 0.15(b)(3)(ii).

public defender, who is on temporary assignment from a prosecutor's office that controls his immediate professional future, might be deliberately or unconsciously devoting less than his best efforts to the defense of his clients. The same would, of course, be true of a public defender assigned to the Department.[9]

The exception to DR 5-105(A) contained in DR 5-105(C)[10] would not appear to apply here. Assuming that "multiple clients" within the meaning of the rule include successive clients with differing interests, the exception applies only when it is "obvious" that the lawyer can adequately represent the interest of each client and all clients have given their fully informed consent. Given the conflict between the interests represented by U.S. Attorneys and the Federal Public Defenders and the control they have over the pay and promotion of their subordinates, it is by no means obvious that an attorney temporarily attached to the one would not retain some permanent loyalty to the other. Moreover, the need to obtain the informed consent of a defendant whenever an Assistant U.S. Attorney is assigned to him could limit considerably the number of cases in which he could participate.

### Effective Assistance of Counsel

Finally, the temporary assignment of an Assistant U.S. Attorney as defense counsel would also present a problem with respect to a defendant's Sixth Amendment right to effective assistance of counsel. It is well settled that effective assistance has not been provided "if counsel, unknown to the accused, and without his knowledgeable assent, is in a duplictous position where his full talents—as a vigorous advocate having the single aim of acquittal by all fair and honorable means—are hobbled or fettered, or restrained by commitments to others." [11] The Fourth Circuit, moreover, has held that the possibility of "subliminal or concealed" influences is so great that the assignment of a prosecutor as defense counsel without the consent of the accused is *per se* a denial of the right to counsel.[12] It should also be noted that the Third Circuit, in

---

[9] There appear to be no published ethics opinions of the ABA or other organizations concerning the exchange programs that are being conducted in several States.

[10] DR 5-105(C) provides:
> In the situations covered by DR 5-105(A) . . . a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

[11] *Porter* v. *United States,* 298 F. 2d 461, 463 (5th Cir. 1962). *Accord: United States* v. *Jeffers,* 520 F. 2d 1256 (7th Cir. 1975); *United States el rel Hart* v. *Davenport,* 478 F. 2d 203 (3d Cir. 1974); *Goodson* v. *Payton,* 351 F. 2d 905 (4th Cir. 1965). *See, generally, Glasser* v. *United States,* 315 U.S. 60 (1942).

[12] *Goodson* v. *Payton,* 351 F. 2d 905, 908-09 (4th Cir. 1965) *supra.* The case arose from the Virginia practice, since discontinued, of assigning the prosecuting attorney of one rural county as defense counsel in other counties if no local attorney was available. *Id.* at 906-07; *see, also, Yates* v. *Payton,* 378 F. 2d 57 (4th Cir. 1967).

The Sixth Circuit has declined to adopt a *per se* rule. *See, Dawson* v. *Cowan,* 531 F. 2d 1374, 1376 (6th Cir. 1976); *Harris* v. *Thomas,* 311 F. 2d 560, 561 (6th Cir. 1965).

*obiter dictum,* has defined "normal competency" of counsel for Sixth Amendment purposes to include "such adherence to ethical standards with respect to avoiding conflicting interests as is generally expected from the bar." [13]

It seems to us that on the basis of these cases an Assistant U.S. Attorney serving temporarily as a public defender could not constitutionally be assigned to a defendant without his informed consent. Regardless of the outcome of litigation on this point, the possibility impairs the usefulness of any assistant participating in an exchange program.

In conclusion, it is our opinion that the statutes governing conflicts of interest and the Department's Standards of Conduct do not as such prohibit the temporary assignment of Assistant U.S. Attorneys to Public Defender Organizations as defense counsel in criminal cases. However, under both the Code of Professional Responsiblity and case law concerning effective assistance of counsel, any assistant so assigned could not represent a defendant without obtaining his informed consent after complete disclosure of his apparent conflicting interests. There is also precedent from one Federal circuit that would appear to make it a *per se* denial of effective assistance of counsel for an Assistant U.S. Attorney to be assigned to a defendant. In our opinion, the requirement of disclosure and consent and the risk of direct or collateral attack on convictions in which a participating Assistant U.S. Attorney was involved, may seriously impair the usefulness of any exchange program involving Assistant U.S. Attorneys.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[13] *United States ex rel. Hart Davenport,* 478, F. 2d 203, 210 (3d Cir., 1974).