PAUL L. SMITH, Admr., Appellee, vs. THE SANITARY DIS-
TRICT OF CHICAGO, Appellant.

*Opinion filed October 28, 1913—Rehearing denied Dec. 4, 1913.*

1. EVIDENCE—*when proof of cost of clearing timber from land is admissible.* In an action against a sanitary district for damages for permanent injury to land from overflow, if there is testimony for the plaintiff that the timber land is as valuable as the cultivated land, the defendant has a right to show, if it can, that the timber on the land is worthless for lumber or mine props, and also that the cost of clearing the timber from the land would exceed the value of the land after it was cleared.

2. SAME—*a defendant may show to what extent land may be profitably cultivated.* Where there is evidence that good crops of corn were raised on the land before the water from the defendant sanitary district's channel was turned into the river but that since then corn could not be raised and the agricultural value of the land was destroyed, the defendant has a right to show what, if any, crops can be profitably raised on the land in a short and wet season.

3. SAME—*what is proper cross-examination to test knowledge and judgment of witness.* Where a witness has testified that all the plaintiff's land, both timber land and corn land, was worth a certain price per acre, it is proper cross-examination, to test his knowledge and judgment, to ask him if he thinks such land was worth as much as the prairie lands in the county, and if he knows what unimproved prairie lands in the county were worth at the time the permanent injury to plaintiff's land is claimed to have taken place.

4. SAME—*when proof of sales of similar property is admissible.* In an action against a sanitary district for damages for permanent injury to lands from overflow, proof of sales of land about the time the injury to plaintiff's land is claimed to have occurred is competent, where the tracts sold were situated about two miles from the plaintiff's land and a general similarity in kind, situation and condition is shown, even though it is not shown that the tracts sold are exactly like the plaintiff's tract.

5. SAME—*when proof of sale of land for gross sum is competent.* As tending to show the value of bottom land, proof of a sale of a neighboring tract of land, composed of both bottom land and upland, for a gross sum is competent, provided it is shown how many acres were bottom land and the price per acre at which the parties agreed it should be put in.

6. SAME—*when refusal to admit exhibits is not reversible error.* Where witnesses have testified to the amount of rainfall, in inches, during certain periods of years and the amount of rainfall during the agricultural seasons of such years, it is not reversible error to refuse to admit in evidence, as exhibits, graphic illustrations intended to represent to the eye the relative amount of rainfall as testified to by the witnesses, even though the court, in the exercise of its discretion, might properly have admitted them.

7. SAME—*when engineers should be allowed to make computations.* Where engineers have testified to a mass of figures representing the monthly rainfall for a like period of years both before and after the time the permanent injury to plaintiff's land from overflow is claimed to have occurred, there is no objection to allowing the witnesses to make the computations and state to the jury the annual average difference in rainfall between the two periods and the annual average difference in rainfall during the agricultural seasons of the two periods, as shown by the figures testified to.

8. SAME—*when claims for damage from overflow, and releases and depositions, are not admissible.* In an action against the Sanitary District of Chicago for permanent injury to plaintiff's land from overflow, due to raising a river by turning the water from the district's channel into the river above the land, claims for damages to the same lands accruing nearly thirty years before from the construction of a dam by the State below the lands, and releases and depositions with reference thereto, are not admissible.

9. SAME—*when paragraphs of report of United States geological survey are not admissible.* Paragraphs of an annual report of the United States geological survey, relating to the flood stage of a certain river, which do not purport to be based upon measurements and are not officially authenticated in any way, are mere hearsay statements, and are not admissible to prove the conditions referred to therein.

10. WATERS—*when instruction authorizing damages for washing or eroding land should not be given.* An instruction authorizing a finding of damages for the washing or eroding of the plaintiff's land should not be given, where there is no allegation or proof of such washing or eroding.

11. SAME—*instruction properly refused which is based upon excluded evidence.* An instruction based upon evidence which the court has excluded is properly refused, even though the court acted erroneously in excluding the evidence.

12. SPECIAL INTERROGATORIES—*what special interrogatories are meant by the statute.* The special interrogatories which a party

has the right to require the jury to answer are restricted to those ultimate facts upon which the rights of the parties directly depend, and a special interrogatory is not proper unless some answer responsive thereto would be inconsistent with some general verdict that might be returned upon the issues in the case.

13. SAME—*what special interrogatories are improper.* Where the plaintiff's cause of action for permanent injury to his land is single although the land consists of several tracts, the defendant cannot split up the cause of action, and by special interrogatories compel a finding by the jury of damages as to each tract according to governmental subdivisions or other natural or artificial divisions.

14. CONSTITUTIONAL LAW—*attorney's fee provision of Sanitary District act is valid.* The provision of section 19 of the Sanitary District act, with reference to the allowance of attorney's fees in actions for damages from overflow, is constitutional. (*Sanitary District* v. *Ray,* 199 Ill. 63, and *Miller* v. *Sanitary District,* 242 id. 321, adhered to.)

APPEAL from the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

EDMUND D. ADCOCK, and JOHN DAILEY, (OSCAR H. OLSEN, of counsel,) for appellant.

J. L. O'DONNELL, and DUNCAN, DOYLE & O'CONOR, (CAIRO A. TRIMBLE, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from a judgment for $8000 for permanent injury done to the land of Frank T. Smith in his life, by overflowing it. The land consisted of several tracts, amounting to 435 acres. The homestead, consisting of 130 acres, was situated a short distance east of the city of Depue, and extended south across the tracks of the Chicago, Rock Island and Pacific Railway Company to and into the north edge of Lake Depue. Lake Depue is a lake two or three miles long, lying south of the city of Depue, between the city and the Illinois river, with which the lake connects at its south-western extremity. The remainder of the land in controversy, except the homestead, lies along the right

bank of the Illinois river for more than two miles, the larger part lying between the river and Lake Depue, which unite on the land. One small tract lies north-west of Lake Depue, one at the junction of the lake and river and one below the junction, through which last tract runs the Hennepin canal. The land was always subject to overflow, and in 1871 the State of Illinois constructed a dam across the Illinois river at Henry, which had the effect to raise the water permanently on this land five feet. Parts of the land have been cleared of timber and were cultivated until the appellant, in January, 1900, turned the water in the channel of the sanitary district into the Desplaines river and thence into the Illinois river. The appellee claims that the increased quantity of water thus introduced into the Illinois river flooded the land so that the parts which had been before under cultivation could not be cultivated, and the timber, of which there was a quantity having a commercial value, was killed and rendered worthless.

There is a conflict in the evidence as to substantially all the elements in the case, but we shall not enter upon an analysis of the testimony, since the cause must be remanded for a new trial.

There was a great discrepancy in the testimony as to the value of the land both before the waters from the sanitary district were turned into the river and afterwards. Part of the land was tillable and was cultivated, while other parts were more or less thickly covered with timber. There was a diversity of testimony as to the quantity, quality and value of this timber. Some of the evidence tended to show that it was of little or no value. Some of the witnesses testified that the timber land was as valuable as the cultivated land. A witness (George C. Helper) who had been engaged in the timber and log business for a number of years testified as to the character, quantity and value of the timber, which he said consisted principally of water elm, which was of no value for lumber because the cost of man-

ufacturing the logs into lumber would exceed the value of
the lumber, and of no value for mine props because it could
not be split. By various questions defendant then sought
to elicit from the witness what it would cost to clear this
land and whether it could profitably be cleared, but the
plaintiff's objections to this examination were sustained.
They should have been overruled. If the timber was of
no value, then it was material for the defendant to prove,
if it could, that the cost of clearing the timber from the
land would be greater than the value of the land after it
was cleared.

Some of the witnesses testified that good crops of corn
were raised on the land before 1900 but that since that time
corn could not be raised and that the value of the land for
agricultural purposes was destroyed. Union Rice, a wit-
ness called by the defendant, testified about the conditions
prior to 1900, and testified that millet would grow and ma-
ture as a short crop on these lands. The defendant then
sought to show by him, from his personal observation since
1900, that other crops could be grown upon these lands in
a short and wet season, but the court, upon the plaintiff's
objection, excluded this evidence. This was error. The
defendant should have been permitted to show to what ex-
tent the land could be profitably cultivated.

Joseph Thiers, the plaintiff's witness, testified that all
the land was worth $75 an acre,—the timber land as well as
the corn land. On cross-examination the defendant's coun-
sel asked him if he thought those lands were worth as
much as uplands, prairie lands, in Bureau county, and if he
knew what uplands, prairie lands, farms without improve-
ments, were worth in Bureau county immediately before
1900. This was proper cross-examination to test the wit-
ness' knowledge and judgment, but the court sustained the
plaintiff's objection. Such cross-examination is, however,
so much within the discretion of the court that we should
not reverse the judgment for this error.

The defendant offered to prove three sales of land in the neighborhood,—two in July, 1899, and the third in 1900,—but was not permitted to do so. The tracts sold in 1899 were about two miles distant from the land in controversy, further down the river, and of the same general character. The admissibility of proof of sales of similar property as furnishing evidence of the value of land has been expressly decided in this State. (*Culbertson & Blair Provision Co.* v. *City of Chicago*, 111 Ill. 651; *Peoria Gas Light and Coke Co.* v. *Peoria Terminal Railway Co.* 146 id. 372.) The only objection made to these two sales is that the conditions are not shown to be the same. While the tracts are not shown to be exactly alike in every detail, a general similarity in kind, situation and condition was shown, and the evidence was competent. The objection made to the third sale was that the sale was of 76 acres, of which only 30 acres was bottom land, the rest being upland, for a gross price of $2400. The defendant's counsel offered to prove that there was a specific agreement of a certain price an acre for the other land, the price of the bottom land being $20 an acre. A sale of two tracts of land for a gross sum is not evidence of the value of either, but a sale of the two, in which the price of each is fixed separately, is evidence of the value of each. The evidence of this sale should also have been admitted.

The court limited the evidence as to the condition of the Illinois river and the bottom lands, and the stage of the water from day to day, as shown by the gauge-readings at the lock at Henry, above the dam, to a time subsequent to 1884. This is complained of by the appellant, but there was no abuse of the discretion of the court in fixing such a limit. The conditions prior to that time were too remote to have any material bearing on the issue here. Some of the witnesses refer to prior conditions in their testimony, but there is nothing in these references prejudicial to the appellant.

An engineer in the employ of the defendant, called as a witness, testified that, basing his calculations upon the gauge record at the Henry lock, he could show, by means of the contour levels of the Smith land, the acreage that would be overflowed by every foot of rise of the Illinois river from 1885 to 1900, assuming the slope of the river from the land to the lock to be one foot. Objection was made to this testimony because there was no evidence as to the slope of the river, and the objection was properly sustained. No evidence was given on this point, except the statement of one witness that he thought at times of low water the slope of the river from the Smith land to the Henry dam would be about a foot. This was only evidence of his thought and not of the fact, and no basis for his opinion was given.

It is objected that the court improperly refused to admit in evidence certain exhibits offered by the defendant. Boers and Dugan, two of the defendant's civil engineers, testified in great detail as to the location of the land involved with reference to the river, its elevation, the quantity of rainfall and its effect on the river, the quantity of land submerged by each foot of rise of the river, and other conditions. Plats and maps showing the contours of the land were introduced in evidence and were used and referred to by the witnesses in testifying. The records of rainfall, made and kept by the United States weather bureau at places where it had stations within the watershed of the Illinois river and its tributary streams, were introduced in evidence. Computations were made of the monthly rainfall from January, 1893, to December, 1910, and these were testified to, showing that in the nine years from January 1, 1902, to December 31, 1910, there were 43.76 inches more rain than in the nine years from January 1, 1893, to December 31, 1901. The monthly rainfall for each month during the entire period was given, and it was testified that for the five months of May, June, July, August and Sep-

tember the rainfall in the last of the nine-year periods above mentioned exceeded that of the first 36.68 inches. One of the exhibits offered consisted of a sheet containing columns representing the amount of rainfall in inches, each year, and was intended to represent to the eye the relative amount of the rainfall as testified to orally. Another of the exhibits was of the same character but referred to the rainfall during the agricultural season of each year. The object and the effect of the testimony were to show that there, had been an excessive rainfall during the last nine-year period,—that is, after the waters of the sanitary district were turned into the river,—and that the greatest part of the excess was during the time when it would do the most damage to the crops. The exhibits were graphic illustrations only of the testimony of the witnesses. They added nothing to it, were not essential to a thorough understanding of it, and the court did not err in refusing to admit them. Plats, photographs, drawings and diagrams which illustrate the subject matter of testimony are frequently received in evidence for the purpose of showing a particular situation explaining the testimony or enabling the jury to apply the testimony more intelligently to the facts shown. The exhibits excluded were of this character and might properly have been admitted, but their admission was largely within the discretion of the court, and it was not error for which the judgment should be reversed, to exclude them. We see no reason, however, why the court refused to permit the witnesses to testify what was the annual average difference between the rainfall of the first nine-year period and the second, what was the average rainfall for the months of April, May, June, July, August and September of each year in each of the nine-year periods, and the average annual difference in the rainfall in those months for each period. There was a mass of figures from which to make such computations, and it was proper for

the witnesses to make the computations and give them to the jury.

Exhibit 179 was a rough sketch of the dam at Henry, made by the witness Dugan while he was testifying, to illustrate his testimony, showing the relative locations of the lock, tower, dam and gauge, and also showing the flash-boards. These things were only incidental to the case. The oral description of them was plain, and there was no necessity for an explanation or illustration of them by means of the sketch. Exhibits 180, 181 and 182 were cross-sections of the valley across the Illinois river at different places, and were not essential to an understanding of the testimony as presented to the jury.

After the construction of the dam at Henry a joint committee of the General Assembly was appointed to investigate all claims for damages caused by such construction, and in accordance with a report of that committee an appropriation was made in 1879 for the payment of such claims. The decedent, Frank T. Smith, and his father, William Q. Smith, who was his predecessor in title of a part of the lands involved here, were among the claimants of damages who were paid, and they executed a release to the State for all damages sustained or to be sustained by reason of the construction or maintenance of the dam. The defendant offered in evidence the claims so presented by the Smiths, their release and their depositions given in support of such claims. They were properly excluded. The suit was for damages occasioned by flooding the lands with water turned into the river from above in 1900 and subsequently. The claim, the release and the depositions referred to damages occasioned by the building of the dam below the land nearly thirty years before. Whether any claim for damages had been made or not and whether any release had been executed or not, the plaintiff could not recover for those damages. If the evidence showed that any part of the plaintiff's damages was occasioned by the

dam and not by the defendant the plaintiff could not recover for such part, and the court so instructed the jury. There was no controversy that the effect of building the dam was to permanently raise the water, and the evidence offered· had no tendency to show whether the damages now claimed resulted from the dam or from the defendant's acts. It only showed that if they resulted from the dam they had been released, and that was immaterial. The depositions, so far as they related to the value or condition of the land or the amount of the damages, were too remote in time to be admissible.

· The court admitted in evidence, over the defendant's objection, certain paragraphs from the seventeenth annual report of the United States geological survey. These relate· to the flood stage of water in the Desplaines river. They do not purport to be based upon measurements and are not officially authenticated in any way. They are only the estimates of the persons who are stated in the report to have made them and are hearsay, which should not have been admitted.

Complaint is made of each of the eight instructions given on behalf of the plaintiff, but none of them except the fourth were materially wrong when considered in connection with all the instructions in the case. The criticism of the fourth instruction, which authorizes the finding of damages for washing or eroding the land when there is no allegation or proof of "washing or eroding," is just. The jury were fully instructed by twenty-three instructions asked by the defendant, covering eleven pages of the printed abstract, which covered any other defects in the plaintiff's instructions.

It is argued that three instructions asked by the defendant which were refused should have been given. Instruction 48 was a cautionary instruction, which told the jury they should dismiss from their minds all personal feeling and sympathy which might have been aroused by the ap--

pearance in court of the widow and children of the plaintiff's intestate. In view of the argument made by the counsel for the plaintiff it should have been given. Instructions 61 and 62 were based upon the hypothesis that though some crops grown on the land before 1900 cannot now be grown, yet the land has a value for growing other and different crops. The evidence in regard to growing other and different crops had been excluded,—wrongfully it has been held, but still excluded,—and instructions based upon such evidence were properly refused.

The land involved lies in five different sections. One tract of 130 acres is entirely separate from the rest and a mile away. The remainder is divided by the river and the lake into five separate pieces detached from one another. One of these five tracts consists of the south half of the south-west fractional quarter of section 2, the south-east quarter of the south-east quarter of section 3, and the fractional north half of section 10, all in township 15, north, range 10, east of the fourth principal meridian. The other three pieces were separate tracts in the south-west quarter of section 3, the north-east and the south-east quarters of section 9, and were all situated north and west of the lake and of the river. In accordance with the provisions of section 79 of the Practice act the defendant asked the court to require the jury to answer the following special interrogatories in regard to each tract:

"What number of acres lying [here describing it,] have been depreciated in their fair cash market value since January, 1900, by reason of the acts of the defendant charged in the declaration or some count thereof?"

"What has been the depreciation in the fair cash market value of the land as it was on January 17, 1900, and shortly prior thereto, of the plaintiff's interest in the tract of land lying [here describing it,] by reason of the construction and operation of the channel of the Sanitary District of Chicago, as charged in the declaration or some count thereof?"

The court refused to submit these interrogatories. It was not error to do so. The plaintiff's cause of action was single, for the damage to all the land. The defendant could not split it up and compel a finding according to government subdivisions or other artificial or natural divisions of the land, in regard to the damage to each. The special interrogatory which a party has a right to require the jury to answer is restricted to those ultimate facts upon which the rights of the parties directly depend. A special interrogatory is not proper unless some answer responsive thereto would be inconsistent with some general verdict that might be returned upon the issues in the case. (*Illinois Central Railroad Co.* v. *Scheffner,* 209 Ill. 9; *Chicago Exchange Building Co.* v. *Nelson,* 197 id. 334; *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 id. 132.) The interrogatories do not refer to any facts determinative of the rights of the parties or any issue in the case. The answers to them could only affect the amount of the damages and have no application to the cause of action or any element of it except the amount of damages.

The judgment includes an amount for attorney's fees, to which the appellant objects both because the statute which allows the attorney's fees is unconstitutional and the amount allowed by the court is excessive. We have held the statute constitutional in *Sanitary District* v. *Ray,* 199 Ill. 63, and *Miller* v. *Sanitary District,* 242 id. 321, and we adhere to those decisions. The appellant introduced no evidence as to the services rendered or their value but submitted the case on the showing made by the appellee. The amount ($4125) seems to us to be large, but since the judgment is to be reversed the attorney's fee falls with the judgment, and it is unnecessary now to express an opinion as to whether it is excessive or not.

The judgment is reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*