THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS A. ROGERS, Defendant-Appellant.

Fourth District   No. 14725

Opinion filed September 29, 1978.

CRAVEN, J., dissenting.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Nolan Lipsky, State's Attorney, of Petersburg (Robert C. Perry and James G. Condon, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
But for a question of conflict of counsel—raised *sua sponte* by this

court—this case would be a simple, straightforward single-issue appeal involving the trial court's sentencing discretion.

In short, we affirm.

But first we will look at the conflict question. In the court below, defendant was represented by court-appointed counsel who was incidentally a special assistant attorney general. This fact was known by this court from a roster or list of assistants and special assistants prepared by the Attorney General of Illinois, and on our own motion we remanded the case to the trial court for the taking of additional evidence on the surrounding circumstances of appointed counsel's duties with the Attorney General. The trial judge conducted the hearing and the report of proceedings was filed in our court.

That crystalline record discloses that the appointed defense counsel's duties as a special assistant attorney general were limited solely to the area of workmen's compensation cases arising in the Springfield and Lincoln, Illinois, areas. Her testimony as to her official responsibilities went like this:

"A. I was to handle all hearings on arbitration where petitions for adjustment of claim were filed by state employees against the state in Lincoln and Springfield. Now then if any of those were taken on review, which is the appeal immediately beyond the arbitration hearing, they would go before a commissioner. I was responsible for counter-reviewing or appealing anything we found unfavorably. That was one commissioner here and after that should either of the parties, myself or the employee, there were oral arguments before the full commission. I was responsible for that.

Q. Did you ever have occasion during your term of service as special assistant attorney general to appear in any court of law in behalf of the attorney general's office?

A. No.

Q. Would you have to appear in court as a result of your appointment as special assistant for the attorney general's office?

A. No.

Q. Why would you not have to so appear?

A. My responsibilities go only to the cases I handled out of Springfield on arbitration and review and beyond the review of the commission itself there is no appeal. The statute denies any review beyond that to the state and state employees. So we cannot take it into the circuit court as one normally would with arbitration hearings.

Q. What office did your case assignments come out of within the attorney general's office?

A. Springfield.

Q. Are you aware of whether or not there is a criminal justice division within that particular office?

A. I am not.

Q. What, if any, contact did you have with anyone in the criminal justice division?

A. None.

Q. Are you aware of who is head of that particular division?

A. No.

Q. What, if any, contact did you have with the criminal appeals division of that office?

A. None.

Q. Are you aware of who heads that particular office?

A. No.

Q. Did you ever have occasion during your term of service as a special assistant attorney general to advise various state's attorneys of the State of Illinois in any capacity?

A. No.

Q. Specifically did you have occasion to render advice and assistance to the various state's attorneys of the State of Illinois with regard to their handling of criminal cases?

A. No.

Q. Did you ever have the opportunity to or did you ever I should say consult with anyone within the attorney general's office relative to criminal cases?

A. No.

Q. Did you ever consult with anyone within the attorney general's office relative to criminal appeals?

A. No.

Q. Did you ever perform any work with regard to criminal law as a special assistant attorney general?

A. No.

Q. Did you ever perform any work with regard to a criminal appeal as a special assistant attorney general?

A. No.

Q. Are you aware at all the duties and responsibilities of the criminal justice division of the attorney general's office?

A. No.

Q. Are you aware of the duties and responsibilities of the criminal appeals division of the attorney general's office?

A. No."

No waiver by the defendant took place. See *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441.

■■ From the above recitation—undisputed below—a majority of this panel can find no conflict—*per se* or actual—in the representation of defendant here. Court-appointed counsel had no access, contact, or

involvement with the criminal justice elements of the Attorney General's office and served that elected official in a very limited, circumscribed and narrow area of civil law. We adhere to our holding in *People v. Crawford* (1978), 65 Ill. App. 3d 790, 382 N.E.2d 1223, wherein we overruled *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643, and renounced the *per se* conflict rule created therein.

Now to the merits of the matter. Rogers (age 17) was sentenced to a term of 1 to 3 years for burglary, and on appeal the sole substantive ground he raises contends that the trial court abused its discretion in sentencing him to imprisonment.

Since the *quantum* of evidence of guilt is not challenged, it will suffice to relate that Rogers had burglarized the home of Alex Fife and removed stereo equipment (which cost $868 and which had a retail value of $1,734). Upon his detention by the sheriff's office, the defendant was twice advised of his *Miranda* rights. Thereafter, Rogers signed a statement of self-incrimination detailing the particulars of the crime.

Following the jury verdict finding the defendant guilty of both burglary and theft (over $150), a sentencing hearing was held. The owner of the burglarized house testified that he saw the defendant after the offenses and that Rogers said to him, "I will get even with you. I will burn your house down." Moreover, the defendant's history showed a long period of prior court supervision, all of which it can reasonably be said was unsuccessful as far as rehabilitation of the defendant was concerned. Without here relating the specifics, the record and presentence report clearly reflected that the defendant was adjudged a delinquent minor in 1975 and that every guidance program which was attempted thereafter had failed. The Department of Children and Family Services had attempted to support the defendant through case worker contact, mental health counseling, homemaker service, foster home placement, vocational rehabilitation training, monetary support, and supervision in an independent living arrangement. Each of these attempts failed. The upshot was that the defendant would not follow the rules.

The trial judge found after the sentencing hearing that the Department of Children and Family Services had tried every available alternative and that probation was simply not appropriate in this case. The sentencing judge noted that Rogers had participated in drug use during prior programs and that his temper seemed to be uncontrollable. Recognizing the difficulty of determining a period of incarceration as a sentence, the court below stated that anything other than the minimum term would be unfair to the defendant. In fact, the minimum term of 1 to 3 years imposed was exactly the term that was suggested by the defendant and his counsel.

■ Defendant now contends that the trial court abused its discretion in sentencing a first offender to the penitentiary, since a sentence of

probation or periodic imprisonment could have achieved the objective of restoring the defendant to useful citizenship. And in support of this argument, he cites Ill. Const. 1970, art. 1, §11: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." But our supreme court has construed this very section as giving equal weight to both considerations—the seriousness of the offense and the objective of restoring the offender to useful citizenship. The second requirement is not to be given greater emphasis than the first. *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300, 302.

Furthermore, the defendant's contention is unpersuasive because the presentence report clearly indicates that numerous rehabilitative attempts have all failed. In view of these facts, the court's determination that Rogers was not a likely candidate for rehabilitation does not appear to be an abuse of discretion when he concluded that probation is simply not appropriate here. It is trite but true to reiterate that the trial court is in a better position to determine punishment to be imposed and to assess the likelihood of a defendant's chances for rehabilitation than is the court on review. Consequently, the reviewing court may not reduce a sentence imposed unless there is an abuse of the trial court's discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, 885.

■■ The trial judge here recognized the difficulty of determining sentence and there is no indication that in doing so he considered any improper factors or was unconcerned with the rehabilitative potential of the defendant. On the contrary, the record reveals that the trial judge was abundantly aware of the defendant's work history, family situation, and personal proclivities. In short, the sentencing judge was aware of the appropriate factors involved in sentencing, and both considered and rejected probation as a viable imposition. There is absolutely no indication to us of an abuse of discretion.

Affirmed.

GREEN, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

In 1975, this court held that a defendant in a criminal case who was represented by a special assistant Attorney General at trial was deprived of his right to the effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution. (*People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643.) That decision was reached without reference to the nature of the duties defense counsel performed in his capacity as a special assistant Attorney General. We denoted the conflict inherent.

The *Cross* opinion, authored by Justice Green for a unanimous panel, relied upon the principles enunciated by our supreme court in *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, which, in turn, relied upon the principles established in *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792. "The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel. (*Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.)" (40 Ill. 2d 109, 111, 239 N.E.2d 441, 443.) *Cross* said, in part:

> "By statute, the Attorney General is required to assist in the prosecution of any party accused of crime when in the Attorney General's judgment the interests of the People of the State require it and to represent the People of the State before the supreme court in all cases in which the State or the People are interested. (Ill. Rev. Stat. 1971, ch. 14, par. 4.)" (30 Ill. App. 3d 199, 202, 331 N.E.2d 643, 645.)

A per se conflict of interest rule was clearly established which mandates reversal of any conviction obtained under circumstances evidencing such a conflict.

> "We do not have to determine whether the defendants suffered any actual prejudice in this case. As this court noted in *People v. Fuller*, 21 Ill. App. 3d 437, 315 N.E.2d 687, a per se rule has been adopted in this State in criminal cases when counsel has a conflict of interest stemming from a commitment to others. That is, an attorney's commitment to others deprives his client of the effective assistance of counsel without showing of actual prejudice." 30 Ill. App. 3d 199, 201, 331 N.E.2d 643, 645.

Since the time this court announced its opinion in *Cross*, no court has disagreed with its holding or deviated from its strict application of a per se rule in instances of this type of conflict. (See, *e.g.*, *People v. Brown* (1976), 40 Ill. App. 3d 562, 352 N.E.2d 15; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14; *People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196.) No petition for leave to appeal was filed in *Cross* and it remains valid precedent at the present time. Two recent supreme court cases (*People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569), authored by Justices Clark and Underwood, respectively, continue the per se rule. Indeed, those two cases clearly signal an adherence to the high standards set forth in *Cross* and in no way intimate that the supreme court would retreat upon this issue.

As Justice Clark said in *Coslet*:

> "This court adopted a *per se* conflict-of-interest rule in *People v. Stoval* (1968), 40 Ill. 2d 109, 112, whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be

restrained in fully representing the defendant's interests due to his or her commitments to others, with even closer scrutiny being applied where counsel is appointed for defendant. (40 Ill. 2d 109, 113.) The test is not and cannot be based only upon the source of a financial gain by the attorney. A rule based solely on financial gain would not only be unworkable in the everyday practice of law but would also have no necessary correlation with the conflicts of interest that arise in such practice. The *Stoval* rule, based upon actual commitments to others, is both workable and necessarily correlates with such conflicts. See *People v. Kester* (1977), 66 Ill. 2d 162, 166-69." (67 Ill. 2d 127, 133, 364 N.E.2d 67, 83.)

In *Stoval,* the supreme court was clear about the comprehensiveness of the rule:

"There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when the counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice. *Glasser v. United States*, 315 U.S. 60; *Goodson v. Peyton* (4th cir.), 351 F.2d 905." *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.

The United States Supreme Court has also recently addressed this general question, albeit in the context of conflicts arising from the representation of co-defendants. As to the existence of a per se rule, however, Chief Justice Burger, writing for the majority, said that *Glasser* should be read "as holding that whenever a trial court improperly requires joint representation over timely objection reversal is automatic." (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173.) If there be any doubt regarding the applicability of the principle enunciated in *Holloway* to the situation at bar, Chief Justice Burger's further comments are instructive:

"Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible to intelligent, evenhanded application. In the normal case where a harmless error rule is' applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with

some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. [Citations.] But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation." 435 U.S. 475, 490-91, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1183, 1182.

In *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149, the supreme court, again through Justice Clark, acknowledged that in certain instances the Attorney General could be called into conflict of interest situations because of his representation of conflicting state agencies or departments. *Briceland* cannot, however, be interpreted to obviate the instant situation or the rule of *Cross. Briceland* concerned the Attorney General's constitutional duty to represent *in civil matters* all agencies of State government. In the context of the criminal law, the conflict of interest on the part of a special assistant Attorney General representing a defendant in a criminal matter raises the protection of the sixth amendment which is a right guaranteed to the defendant. That sixth amendment right to the effective assistance of counsel cannot be abridged by reference to *Briceland* which concerns civil matters and a constitutionally mandated representation not present here.

Another panel of this court, consisting of Judges Green and Mills, with Judge Trapp dissenting, in an opinion authored by Judge Green, has sought to distinguish or ameliorate the rule of *Cross*. (See *People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 382 N.E.2d 1223.) That opinion overrules *Cross*. The court then announces a new rule and creates a temporizing and unworkable rule completely ignoring established precedent. In effect, that opinion abandons the per se rule recognized in *Cross* and seeks to allow a "small" conflict of interest in the representation of criminal defendants. It should be obvious to even the casual logician that any conflict is a conflict. In *Crawford*, the Attorney General, by an assistant, was the prosecutor and an assistant was defense counsel, yet the court there found no conflict. So far as I am concerned, *Crawford* is lacking in any persuasion.

It should be noted that a majority of the judges of this district still adhere to the *Cross* opinion. See *People v. Fife* (1978), 65 Ill. App. 3d 805, 382 N.E.2d 1234; *Crawford*.

The opinion in *Crawford* is even more anomalous when it is considered that its author has concurred in Supreme Court Rule 23 orders (58 Ill. 2d R. 23) reversing criminal convictions in *People v. Stone* (4th Dist. No. 12740, November 18, 1975) and *People v. Bernard* (4th Dist. No. 13279, August 9, 1977). It must be asked, given this history, why *Cross* should now be interred by the majority here and in *Crawford*. To use these cases as a vehicle to overrule *Cross* is incomprehensible.

Any difficulty in the administration of justice caused by the per se conflict of interest rule previously enunciated by this court is not caused by the Attorney General. He has directed his special assistants not to undertake the representation of criminal defendants precisely for the reason that a conflict of interest arises thereby. The Illinois State Bar Association, Committee on Discipline, has agreed with this position in Opinion No. 593 (66 Ill. Bar. J. 671 (1978)). The problem, if any, is caused by the insensitivity of those special assistants who knowingly enter into conflict situations without first securing a waiver from their clients.

It is the opinion of a minority of the members of this court that the *Cross* rule places an undue burden on the administration of justice and may allow a defendant in a criminal case to successfully evade an otherwise legitimate conviction. Again, Justice Clark has already spoken to this problem in *Coslet*:

> "This court, in adopting this opinion, is well aware that in many, if not most, instances a prosecutor has no knowledge of, and, indeed, is probably powerless to avoid, a situation wherein the person he is prosecuting, by his or her own actions, retains an attorney who subsequently puts himself in a conflict-of-interest situation with his client, resulting, as here, in the reversal of a conviction against defendant. One could even conjecture that a defendant and his lawyer could knowingly and collusively enter into such an arrangement in an effort to obtain a reversal in the event of a conviction.

> This is a risk that this court is prepared to take, however, in order to assure that every person is assured of the right to effective assistance of counsel at his trial." 67 Ill. 2d 127, 136, 364 N.E.2d 67, 84.

The majority opinion here accomplishes a reversion to those standards of ethical conduct by some which has brought down upon the members of our profession the scorn of all reasonable and fair-minded persons. I refuse to participate in the legitimization of the obvious conflict of interest here. The defendant was denied effective assistance of counsel.