THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CRAWFORD DISTRIBUTING COMPANY, INC., *et al.*, Defendants.— (MAURER DISTRIBUTING CO. *et al.*, Defendants-Appellants.)

Fourth District    No. 12875

Opinion filed September 29, 1978.—Rehearing denied October 31, 1978.

TRAPP, J., dissenting.

Marshall A. Susler, Robert D. Owen, and Linda M. Castleman, all of Owen, Roberts, Susler & Murphy, of Decatur, for appellant Maurer Distributing Co.

K. Michael Latshaw, of Bennett, Willoughby & Latshaw, P. C., of Decatur, for appellant Gerald Skeffington.

William J. Scott, Attorney General, and Edwin C. Thomas, Special Assistant Attorney General, of Thomas & Miller, both of Chicago (Thomas J. Ciechanowski, Assistant Attorney General, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendants Maurer Distributing Co., Gerald Skeffington and Skeff Distributing Co. appeal their convictions of the offense of engaging in a conspiracy in restraint of trade in violation of section 3(1)(a) of the Illinois Antitrust Act (Ill. Rev. Stat. 1971, ch. 38, par. 60—3(1)(a)) and sentences of fines of $10,000, $500 and $9500, respectively, imposed by the circuit court of Macon County after a lengthy jury trial.

Pursuant to the terms of section 6(1) of the Act (Ill. Rev. Stat. 1971, ch. 38, par. 60—6(1)), the case was initiated and prosecuted by the Attorney General. We are faced at the outset with the question of whether, regardless of the other merits of the appeal, the judgments should be reversed and a new trial awarded because each of the defendants was represented throughout the trial by lawyers who were members of firms in which at least one member was a special assistant Attorney General for some specific type of civil proceedings unrelated to antitrust. It is contended that members of the firm representing defendant Maurer Distributing Co. were special assistant Attorneys General for cases in condemnation and a member of the firm representing defendants Skeffington and Skeff Distributing Co. was a special assistant Attorney General for public aid cases.

In *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643, decided after the instant trial, the defendant was represented in a criminal trial by a lawyer who was a special assistant Attorney General for inheritance tax proceedings. After conviction, defendant, represented by new counsel, contended in a post-conviction proceeding that he had been deprived of his right to effective assistance of counsel. We agreed and reversed, granting him a new trial. We concluded that because the Attorney General had responsibility to assist in State prosecutions in the trial court when necessary and to represent the prosecution in all cases before the supreme court, the commitment of the special assistant to the Attorney General conflicted with his commitment to his client. We did not discuss the difference between the relationship of the Attorney General to a special assistant as opposed to his relationship to an assistant whose authority is not so limited. We concluded that the evidence showed no waiver of the conflict of interest by the defendant. We also noted that the court had stated in *People v. Fuller* (1974), 21 Ill. App. 3d 437, 315 N.E.2d 687, that a "per se" rule had been adopted in this State whereby if an attorney representing a criminal defendant had a conflict by virtue of a commitment to others, the defendant need not show actual prejudice to establish a violation of his right to counsel.

The "per se" rule began with *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, the first of a series of cases in which a conviction was overturned because defense counsel had a commitment to others not

charged with the crime, but which, nevertheless, conflicted with his duty to the accused. There, defense counsel was a member of a firm that represented the business entity victimized by the burglary and theft with which the defendant was charged. The court cited *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, for the proposition that the defendant need not show actual prejudice to prove a violation of his right to effective assistance of counsel.

*Stoval* was followed in the supreme court by *People v. Meyers* (1970), 46 Ill. 2d 149, 263 N.E.2d 81; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569, and *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67, where convictions were also set aside because of defense counsel's commitment to others. In *Meyers*, defense counsel, who also represented defendant's wife on a possible dramshop action against the tavern where defendant had been drinking prior to the offense charged, participated in proceedings at which the defendant pleaded guilty to the offense. In *Kester*, defense counsel had appeared as an assistant State's attorney earlier in the same proceeding. In *Coslet*, the defendant was charged with homicide in killing her husband. Defense counsel, when appointed in that capacity, represented the administrator of the husband's estate. Because the defendant's conviction might bar her from inheriting from the estate, the court ruled that counsel's commitment to the estate required a reversal of the conviction. (*People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196, followed *Cross*.) A comprehensive discussion of these cases is contained in R. Ehrmann, *The Per Se Conflict of Interest Rule in Illinois*, 66 Ill. B. J. 578 (1978).

At the time of our decision in *Cross*, we were unaware of I.S.B.A. Ethics Opinions No. 335, approved October 24, 1970, and No. 364, approved June 26, 1971. I.S.B.A. Opinion No. 321, approved July 19, 1969, had ruled that a conflict of interest existed if a special assistant Attorney General, even though his work was limited to special civil fields, represented a defendant charged with the commission of a crime in a State court. The reasoning was similar to ours in *Cross*. Opinion No. 335 overruled Opinion No. 321 to the extent that No. 321 prohibited a special assistant Attorney General from accepting private employment adverse to the State in fields unrelated to his public employment. The opinion noted that the Code of Professional Responsibility adopted after Opinion No. 321 was rendered did not prohibit outside employment adverse to the State by a special assistant Attorney General, but only prohibited such employment in matters in which he might have responsibility or in a particular matter in which he had responsibility in the past. Opinion No. 364 followed Opinion No. 335 and stated that an assistant Attorney General with responsibilities outside the criminal field could properly represent defendants in State criminal proceedings.

■■ As our society has become more complicated, the number of criminal cases to be tried has increased, as has the amount of litigation to which the State is a party. The Attorney General is the attorney for the State in all legal proceedings (Ill. Rev. Stat. 1977, ch. 24, par. 4) and has traditionally found it desirable to often seek aid in this litigation from attorneys local to the forum. The economics of the practice of law and the needs of clients in a more complex society have caused law firms to become larger. There is no dispute that if one member of a law firm has a conflict of interest, that conflict tarnishes all members of the firm. (See *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 365 N.E.2d 481.) *Stoval* and *Coslet* indicate that a valid waiver of a conflict of interest, if one exists, is difficult to obtain, particularly from an unsophisticated client. Because of the foregoing factors, the inevitable result of *Cross* is either to greatly limit the number of lawyers able to give local help to the Attorney General, to limit the number of lawyers able to discharge the responsibility of the bar to represent those charged with a crime or both. Of particular significance is the inhibition from doing *pro bono* or partially compensated criminal work which *Cross* places upon members of law firms whose members have from time to time assisted the Attorney General.

■■ In seeking help in litigation, the Attorney General cannot delegate his responsibility to a lawyer whose help he might need but must appoint that lawyer as an assistant. He has adopted the practice of appointing such lawyers as special assistants with their authority limited to a particular type of litigation. If such a special assistant, whose authority does not include criminal cases, takes on the representation of a person charged in a criminal proceeding in which the Attorney General is involved, that attorney is not placed in a position as in *Stoval* where he might have to cross-examine and impeach his own clients. Neither is he placed in a position as in *Meyers* and *Coslet* where his civil clients stand to gain by the conviction of the individual he represents in the criminal case. The special assistant Attorney General for limited civil types of cases owes no duty to the Attorney General in criminal matters. His duty is owed solely to those whom he represents who are charged with the commission of a crime.

■■ ■ It is true that the attorney who is a special assistant Attorney General may be influenced by a desire to retain his relationship with the Attorney General. In the private sector, one law firm may wish to hire another law firm to assist it in particular types of litigation. The firm being retained may have a desire for that relationship to continue but the relationship does not prevent that firm from participating in unrelated litigation adverse to the other firm. We consider the situation of a lawyer who represents a defendant in a criminal proceeding in which he is

adverse to the Attorney General while at the same time being a special assistant Attorney General for unrelated civil cases to be more nearly analogous to the situation described in this paragraph than to that in *Stoval, Meyers, Kester* or *Coslet*. For this reason and the other reasons stated, we overrule *Cross*.

In the instant case, the existence of defense counsel's relationship to the Attorney General is presented only by affidavits filed at our request after the case was on appeal in this court. We need not consider whether this information is properly before us because we do not deem it sufficient to set aside the instant convictions.

Accordingly, we turn to the other aspects of the case.

The indictment charged seven corporations and six individuals with conspiring to fix wholesale prices of beer. Evidence was introduced tending to show that by agreement among various distributors, prices were simultaneously increased on certain of the better-selling brands of beer as sold in the more popular types of containers.

Defendants contend that the trial court erred in: (1) permitting the State to call Michael Maurer as a witness in front of the jury, (2) admitting into evidence the testimony of Frank Foley and the charts which he had prepared, (3) refusing to poll the jury with regard to newspaper articles published during the trial and (4) in various other ways which, in toto, denied them a fair trial. They also maintain that the associate judge assigned to try the case had no authority to do so. In addition, defendant Maurer Distributing Co. claims that its right to a speedy trial was denied.

Michael Maurer was the president and sole shareholder of defendant Maurer Distributing Co. Prior to calling him as a witness, the State moved, out of the presence of the jury, to grant him immunity pursuant to section 106—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 106—1). That section provides for a grant of full transactional immunity to the recipient. (*People ex rel. Cruz v. Fitzgerald* (1977), 66 Ill. 2d 546, 363 N.E.2d 835.) Maurer objected to the motion, however, arguing that the Attorney General had previously promised immunity not only to him but to his defendant corporation. The court granted the motion. The State then called Maurer as a witness. Because of his indication that he would not testify, the court ordered that he first be examined out of the presence of the jury to see if he would still attempt to refuse to testify. The State then interrogated Maurer out of the presence of the jury and he refused to testify under claim of privilege.

The court next conducted a hearing upon the scope of immunity that had been granted but made no ruling in that respect. The State then requested that Maurer be placed on the stand in front of the jury so that it might question him. The defendants objected on the grounds that Maurer had indicated that he would refuse to testify and inferences from this

procedure would prejudice their defense. The court, apparently believing that questioning the witness before the jury was a necessary step before holding him in contempt if he refused to testify, granted the State's request. Maurer was called in front of the jury and refused to testify. The court ordered him to do so and he continued to refuse. After being advised, out of the presence of the jury, as to his immunity and the consequences of his refusal, he then testified.

■■ Error may occur when the prosecution calls a witness before the jury who refused to testify, if the prosecution knows in advance that the witness would claim the privilege and the claim of the privilege creates an innuendo prejudicial to the defendant. (See *People v. Myers* (1966), 35 Ill. 2d 311, 220 N.E.2d 297.) However, when the witness, as here, subsequently testifies giving evidence highly favorable to the prosecution, any inference prejudicial to the defendant that arose from the claim of the privilege is superseded by the damaging effect to the defendant of the testimony itself. (See *United States v. Foster* (7th Cir. 1973), 478 F.2d 1001.) The procedure which took place here did not give rise to reversible error.

The State called Frank Foley as a witness, laying a foundation by showing that he was an accountant capable of analyzing voluminous records. He testified to having examined 1200 invoices selected by the prosecutor from a much larger number subpoenaed from the defendants. The invoices selected concerned beer sales by various defendants of the highest selling brands in the most popular containers for a three-day period in late December 1969. Foley had prepared charts depicting the prices which these invoices indicated that the defendants charged during that period. The charts indicated a simultaneous price increase by the distributors. The charts were admitted into evidence. The defendants contend that the testimony and the charts were erroneously admitted over their objection because (1) the subject matter of Foley's testimony was not proper for expert testimony, (2) he did not use or rely upon his expertise, (3) the charts did not represent an examination of the whole evidence, and (4) the charts were misused by the prosecution.

■■ Expert *opinion* testimony is inadmissible on matters that are of common knowledge. (See discussion in *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809.) However, where original evidence consists of numerous documents which cannot conveniently be examined in open court and the facts to be proved are calculations made from an examination of the documents, a witness capable of making the examination and calculations may testify to the results thereof. (Cleary, Handbook of Illinois Evidence §11.25, at 203 (2d ed. 1963); *Smith v. Sanitary District* (1913), 260 Ill. 453, 103 N.E. 254; *People v. Gerold* (1914), 265 Ill. 448, 107 N.E. 165.) The price

changes that took place during the three-day period could not have been calculated by the jury conveniently. Although the task was not a difficult one for Foley, it was necessary to show that he had sufficient expertise to do it. The evidence showed that he did rely upon this expertise in making the calculations. Foley did not give *opinion* evidence.

■■ For a summary to be presented, the examination must be of the whole of the relevant documents. Here, it was not shown that the invoices presented to him did cover all of the sales for the particular defendants of the beer in the types of containers charted for the three days in question. While Foley did not chart the sales of Old Milwaukee Beer for the dates in question, Maurer had testified that was not one of the popular brands which had been subject to the price raise. Although the charts constituted a graphic summary of Foley's testimony, the charts' admission into evidence was within the discretion of the trial court. (*Smith v. Sanitary District.*) Although the charts were altered after the trial started, this did not occur after their admission into evidence and did not render them inadmissible. The charts were not misused and their admission and that of Foley's testimony was proper.

After several days of trial, charges against six of the 13 original defendants were dismissed when those defendants agreed to the entry of a civil consent decree. Subsequently, local newspapers printed articles describing what had happened, some stating that although consenting to the decrees, the defendants involved did not admit their guilt. Defendant Skeff Distributing Company requested the court to poll the jury to determine if any of the jurors had read the articles or listened to news reports concerning this aspect of the trial. Copies of the newspaper articles were attached to the written request. The trial court refused. In *People v. Cox* (1966), 74 Ill. App. 2d 342, 220 N.E.2d 7, this court granted a new trial when under similar circumstances involving more prejudicial newspaper articles, the trial court had refused a similar request. Here, any error was rendered insignificant because in closing argument without objection by other defendants, counsel for defendant Maurer brought the matter of the consent decree before the jury.

■■ ■ Pursuant to section 115—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 115—4), each of the defendants had three peremptory challenges. After the defendant Maurer Distributing Co. had exhausted its challenges it attempted a fourth challenge, claiming that the procedure for felonies should be followed. The court sustained an objection to the fourth challenge. As we explain later, the charge was a misdemeanor and the procedure for misdemeanors was properly followed. That defendant also argues on appeal that it should have been permitted to use the unused challenges of other defendants because they consented that such might be done. We cannot find any place in the voluminous record where this request was made at trial. In any event, no

authority is cited in support of the proposition. The trial court did not err in refusing the fourth challenge.

■■ Defendants maintain that the court erred in admitting testimony of prices charged by wholesalers for beer in other containers and in years not included in the indictment. Very little of this evidence got into the record. Conspiracy may be proved by circumstantial evidence. (*People v. Rudnicki* (1946), 394 Ill. 351, 68 N.E.2d 723.) This evidence had some probative value in this respect and was not otherwise very prejudicial to defendants. No reversible error occurred.

■■ Concerning defendants' contention as to the breadth of the cross-examination permitted, the limitations placed by the court upon defendants' cross-examination of prosecution witnesses were not an abuse of discretion. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) Even though wide latitude must be granted an attorney who is cross-examining an expert witness (*Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 170 N.E.2d 564), the questions to which prosecution objections were sustained were only remotely related to the direct examination of the witness. Neither did the trial court err in overruling defendants' objections to the prosecution in rebuttal argument. The claim was made that the prosecution was misstating the evidence. In fact no substantial misstatement was made.

■■ The trial court was also within its discretion in refusing to permit the defense to introduce exhibits during the cross-examination of the State's witnesses while the State was presenting its case in chief. See *Horner v. Bell* (1949), 336 Ill. App. 581, 84 N.E.2d 672; Hunter, Trial Handbook for Illinois §77, at 70 (1969).

■■ ■ The record does not support defendants' contention that the prosecution privately contacted and coerced a trial judge to recuse himself from the case. Neither does it support their contention that the State deliberately selected and omitted relevant information in order to distort the facts in presenting its case. All pricing information available to the State was also available to defendants. If information not presented was favorable to their case, they could have presented it. We likewise find no prejudice requiring reversal to have arisen because of a communication from the State liquor commission to the trial judge or from instructions given by the prosecution to its witnesses with reference to their discussing the case with others.

■■ Article VI, section 8 of the Illinois Constitution of 1970 states in part, "The Supreme Court shall provide by rule for matters to be assigned to Associate Judges." Supreme Court Rule 295 (58 Ill. 2d R. 295) provides that the chief judge of a circuit or another circuit judge designated by him may assign any associate judge to any case except criminal cases "in which the defendant is charged with an offense punishable by imprisonment for more than one year." The trial judge assigned to the

case here was an associate judge. At the time of the alleged offense and at the time of indictment, the offense charged was punishable by fine and imprisonment not to exceed six months. (Ill. Rev. Stat. 1971, ch. 38, par. 60—6.) Effective September 15, 1973, the offense became a Class 4 felony punishable by imprisonment in excess of one year (Ill. Rev. Stat. 1973, ch. 38, pars. 60—6 and 1005—8—1).

It is provided by statute that:

> "No new law shall be construed to repeal a former law, * * * as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, * * * save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." Ill. Rev. Stat. 1973, ch. 131, par. 4.

Defendants maintain that because the offense with which they were charged was classified as a felony at the time of trial, this case could not properly be tried by an associate judge. However, it was the penalty provision of the statute that was changed and not the rule on assignability. Because of the time frame, one convicted of the charge in question could not be punished by incarceration in excess of six months. Thus the case was properly assignable to an associate judge. Moreover, the obvious intent of the assignment rule is to entitle a person in jeopardy of felony incarceration to trial by a circuit judge. The assignment here to an associate judge was proper.

In passing upon defendant Maurer Distributing Co.'s contention that it was denied its statutory right to a speedy trial, we are concerned with an extensive calendar of events. On January 7, 1972, that defendant filed a discovery motion, and on February 22, 1972, filed a motion for an immediate trial pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 103—5). Subsequently the indictment was dismissed upon defendants' motion, the State appealed, the supreme court reversed (*People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 291 N.E.2d 648), and the mandate was filed in the trial court on February 6, 1973. The discovery motion was not called for hearing until June 7, 1973. The record does not indicate that defendant Maurer Distributing Co. requested an earlier setting or objected to the hearing on the motion being delayed until that date. In ruling on that motion the court ordered the State to comply by July 3, 1973, and on its own motion continued the previously set trial date from June 18, 1973, to August 20, 1973. On July 12, 1973, defendant Maurer Distributing Co. filed a motion for substitution of judges and on July 17, 1973, 161 days after the filing of the supreme court mandate on February 6, 1973, filed a motion for discharge. Pursuant to the eventual allowance of the motion for substitution of judges, Associate Judge Andrew Stecyk was assigned to try the case on November 9, 1973.

The discharge motion was heard and allowed on January 3, 1974, but upon motion of the State, the court reconsidered and denied the motion on January 31, 1974. Defendant Maurer Distributing Co. then filed a motion for further consideration of its previous motion but that motion was denied. The selection of a jury to try the case was commenced on April 15, 1974. On April 18, before the jury had been selected and sworn, defendant Maurer Distributing Co. filed another motion for discharge.

Maurer Distributing Co.'s claim of denial of its statutory right of trial within 160 days of demand turns upon whether its discovery motion brought about delay attributable to it. If it did, the 160-day period was tolled prior to running its course. If it did not, we can see no other grounds for that defendant not having been granted a discharge on its July 17 motion. The trial court ultimately ruled that defendant Maurer Distributing Co. was chargeable with delay. We do not find that determination to be error.

■■ In *People v. Ross* (1971), 132 Ill. App. 2d 1095, 271 N.E.2d 100, this court ruled that a discovery motion filed with the defendant's motion for a speedy trial but not called for hearing by defendant until near trial time caused delay when the allowance of the motion required the State to give extensive discovery. Here, the discovery motion was filed prior to the speedy trial motion but was not called for hearing until 11 days before the date set for trial. The discovery required was extensive. The trial judge's determination as to whether the defendants' filing of a discovery motion constitutes delay is entitled to weight upon review. (*People v. Snyder* (1975), 32 Ill. App. 3d 1003, 337 N.E.2d 108.) We accept his determination that defendant was not entitled to a discharge on the July 17, 1973, motion.

■■ When that same defendant made a motion for substitution of judges and that motion was eventually allowed, the running of the 160-day period was again tolled until the new judge was assigned on November 9, 1973. That term of 160 days expired on April 17, 1974, after the selection of the jury had started but before it had been selected and sworn. Although jeopardy does not attach until the jury is selected and sworn (*People v. Friason* (1961), 22 Ill. 2d 563, 177 N.E.2d 230), no case has been called to our attention ruling that the statutory right to speedy trial is not met when the jury selection starts within the prescribed time limit. We conclude that when the selection of the jury began within 160 days from Judge Stecyk's assignment, there was compliance with the 160-day rule.

The defendant Maurer Distributing Co. was afforded the statutory right to a speedy trial.

For the reasons stated, we affirm.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

Here the attorney general directly prosecuted an alleged conspiracy for violation of the Illinois Antitrust Act following his official investigation, all as provided in the Illinois Antitrust Act (Ill. Rev. Stat. 1971, ch. 38, par. 60—1 *et seq.*). Defendants' retained counsel were members of law firms which had one or more appointed and acting assistant Attorneys General. Throughout the proceeding, defendants' counsel directly confronted the attorney general at every stage.

The principal opinion progresses remarkably from a conclusion that we need not determine whether the record adequately shows that defendants' counsel were, in fact or by association, duly appointed and acting special assistant Attorneys General to a determination that such appointees owed no duty which created a conflict of interest to his individual client, and continues to overrule the prior opinion of this court in *People v. Cross* (1975), 30 Ill. App. 3d 199, 331 N.E.2d 643. That opinion determined that where a defendant in a criminal proceedings was represented by retained counsel who was a special assistant Attorney General for inheritance tax matters there was a *per se* conflict of interest, albeit, such counsel tried the case vis-a-vis a State's Attorney.

I would conclude that the issue of conflict of interest is adequately presented in this record for the reason that defendants' counsel have stated in this court in oral argument, that members of their respective law firms were duly appointed and acting special assistant Attorneys General for civil matters but with no responsibility in criminal prosecutions.

The opinion in *People v. Stoval* (1968), 40 Ill. 2d 109, 111, 239 N.E.2d 441, 443 stated:

> "The right to the effective assistance of counsel is a fundamental right and entitles the person represented to the undivided loyalty of counsel."

In *Stoval*, counsel for a criminal defendant had as a client a jewelry business and its proprietor which defendant was alleged to have burgled. In stating its policy, the supreme court quoted from the opinion in *United States ex rel. Miller v. Myers* (E.D. Pa. 1966), 253 F. Supp. 55, 57, adopting the language:

> "This situation is too fraught with the dangers of prejudice, prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of relator's rights whether or not it in fact influences the attorney or the outcome of the case." 40 Ill. 2d 109, 113, 239 N.E.2d 441, 443.

The policy announced by the supreme court is not framed in the context of a present "duty to the Attorney General in criminal matters" as is stated in the opinion here. Rather, it is stated that:

"[S]ound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with *possible conflict* of interests." (Emphasis added.) (40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.)

This position is literally adopted by quotation in *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.

In *Kester*, the court further stated:

"The parties concur that a defendant's fundamental right to effective assistance of counsel requires that his attorney not represent conflicting interests or undertake the discharge of inconsistent duties." 66 Ill. 2d 162, 166, 361 N.E.2d 569, 571.

By the use of the disjunctive, it appears that conflicting interests and inconsistent duties express different rather than synonymous alternatives. This seems confirmed by the statement in *Kester* that defendant's counsel, a former assistant State's Attorney "presumably had no continuing commitments to that office at the time he represented the defendant." 66 Ill. 2d 162, 167, 361 N.E.2d 569, 571.

That opinion noted, nevertheless:

"But there is also the *possibility* that the attorney might be subject to subtle influences which could be viewed as adversely affecting his ability to defend his client in an independent and vigorous manner." (Emphasis added.) 66 Ill. 2d 162, 167, 361 N.E.2d 569, 572.

In *People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196, *appeal denied* (1977), 66 Ill. 2d 641, appointed defense counsel was then employed as an assistant Attorney General for the handling of but two cases of a civil nature. Upon the issue of effective assistance of counsel, the prosecution argued that the rule announced in *Cross* was too stringent and urged that the rule used in attorney discipline proceedings, *i.e.*, an attorney who holds public office may not accept private employment in matters over which he may potentially have responsibility, as a public official, ought to be applied to the facts on a case-by-case basis. (Illinois Code of Professional Responsibility, DR 8—101(A)(5) (1970).) The court stated:

"We believe the State misapprehends the question involved and the policy reasons upon which the conflicts rule is grounded." 52 Ill. App. 3d 241, 246, 367 N.E.2d 196, 200.

The court continued:

"The controlling aspect is not whether he personally would ever be assigned to assist in the prosecution of a murder case, but whether he is presently accepting and perhaps seeking future assignments from an office which possesses an interest adverse to defendant's;

*i.e.*, the duty to assist in the prosecution of criminal cases whenever the interests of the people require it." 52 Ill. App. 3d 241, 247, 367 N.E.2d 196, 200.

In sum, the court stated:

"Moreover, we think that *Kester, Meyers,* and *Stoval* make it clear that, as a matter of sound judicial administration, lawyers who are committed to others with potentially adverse interests to those of defendant should not be appointed." 52 Ill. App. 3d 241, 247, 367 N.E.2d 196, 201.

An appointee of the Attorney General, albeit in a designated noncriminal portion of the business of that office, is for practical purposes as if upon a retainer by a private client. The Attorney General represents the people of this State. An appointee logically is responsible for the same representations. It is most doubtful that an attorney retained by a private client to do tax work or negotiate real estate contracts could properly undertake to sue that client in a personal injury case. The fact that the appointee is retained for a special category of practice does not alter the nature of an attorney-client relationship which establishes the commitment of the attorney to the interests of that client.

The principal opinion suggests that the policy stated in *Stoval* and *Cross* is minimized by reason of the fact that here there is no present possibility that counsel for defendants would be required to cross-examine or undertake to impeach a personal client. There are other aspects of the problem. The opinion in *Kester* points out that the possibility of a conflict of interest might affect the performance of counsel:

"[B]y a subliminal reluctance to attack pleadings or other actions and decisions by the prosecution * * *." (66 Ill. 2d 162, 167, 361 N.E.2d 469, 572.)

The same fault may arise upon the issues of admissibility of evidence.

The supreme court has further given substantial weight to the fact that an attorney who may have served ably and vigorously with complete loyalty may nevertheless be subjected to embarrassing or unfounded charges of inadequate representation. Such complaints defy a rational explanation or resolution.

By this statement of policy no inference is to be directed to counsel appearing here. Both this record and their prior appearances in this court have demonstrated that they exercise professional diligence and zeal in the representation of their clients. Rather, it is sought to avoid the necessity that a court of review speculate upon the constitutional issue of a client's representation. A conflict of interest is rarely, if ever, clearly ascertainable in the roster of cases which present this particular question.

The opinion appears to adopt a *per se* rule that an appointment as a

special Attorney General in noncriminal matters does not create a possible conflict of interest when counsel appear in a criminal case. I cannot agree that this is sound policy.

Upon this issue, the case should be reversed and remanded for a new trial.